## BRUNETTE MACHINE WORKS, LTD. *v.* KOCKUM INDUSTRIES, INC.

No. 70–314. Argued March 23, 1972—Decided June 7, 1972

MARSHALL, J., delivered the opinion for a unanimous Court.

*J. Pierre Kolisch* argued the cause and filed briefs for petitioner.

*Harry M. Cross, Jr.,* argued the cause and filed a brief for respondent.

*Martin J. Adelman* filed a brief for I.T.L. Industries Limited as *amicus curiae* urging reversal.

*Curtis F. Prangley, Ronald A. Sandler,* and *J. Terry Stratman* filed a brief for Amerace Esna Corp. as *amicus curiae* urging affirmance.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Section 1391 (d) of the United States Judicial Code provides that "[a]n alien may be sued in any district." Section 1400 (b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a

regular and established place of business." We are asked to decide which provision of Title 28 governs the venue of an action for patent infringement against an alien defendant.

Respondent Kockum Industries, Inc., an Alabama corporation doing business in Oregon, holds a United States patent on a machine that removes bark from logs. Kockum claims that petitioner Brunette Machine Works, Ltd., a Canadian corporation, has infringed that patent by assisting two American manufacturers to make and sell similar machines.[1] Kockum obtained service of process on Brunette in Oregon, under that State's long-arm statute, Ore. Rev. Stat. § 14.035, and filed this action for patent infringement in the United States District Court for the District of Oregon. The District Court dismissed the complaint on the ground of improper venue, accepting Brunette's contention that § 1400 (b) is the exclusive provision governing venue in patent infringement litigation, and that its requirements were not satisfied here.[2] The Court of Appeals reversed, holding that § 1391 (d) applies to patent infringement suits as to all others, and hence that Brunette is subject to suit as an alien in any district. 442 F. 2d 420 (1971). We granted certiorari to resolve a conflict in the circuits on this question.[3] 404 U. S. 982 (1971). We affirm.

---

[1] Respondent's suit against one of those manufacturers, an Oregon corporation, is now pending on appeal to the Court of Appeals for the Ninth Circuit. *Kockum Industries, Inc.* v. *Salem Equipment, Inc.*, No. 25870.

[2] Petitioner does not "reside" in Oregon, because the residence of a corporation for purposes of § 1400 (b) is its place of incorporation. *Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U. S. 222 (1957), discussed *infra*, at 711 and n. 10. And while the alleged infringement occurred in Oregon, petitioner apparently has no regular place of business there.

[3] Compare the decision of the Court of Appeals for the Ninth Circuit below with *Coulter Electronics, Inc.* v. *A. B. Lars Ljungberg & Co.*, 376 F. 2d 743 (CA7), cert. denied, 389 U. S. 859 (1967). Several

## I

Section 1391 (d), providing that an alien may be sued in any district, appeared for the first time in the Judicial Code of 1948, but its roots go back to the beginning of the Republic. The first restrictions on venue in the federal courts were set forth in the Judiciary Act of 1789:

> "[N]o civil suit shall be brought before either [district or circuit] courts against an inhabitant of the United States, by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ . . . ." 1 Stat. 79.[4]

Because this limitation on the place where federal cases might be tried applied in terms only to suits against "an inhabitant of the United States," suits against aliens were left unrestricted, and could be tried in any district, subject only to the requirements of service of process.

district courts in other circuits have adopted the view taken by the Court of Appeals for the Ninth Circuit in this case, see *Chas. Pfizer & Co.* v. *Laboratori Pro-Ter Prodotti Therapeutici,* 278 F. Supp. 148 (SDNY 1967); *Olin Mathieson Chemical Corp.* v. *Molins Organizations, Ltd.,* 261 F. Supp. 436 (ED Va. 1966).

[4] The provision for venue wherever the defendant "shall be found" is deceptively broad. The grant of federal jurisdiction at that time consisted almost exclusively of suits between parties of diverse citizenship. Unlike the present statute, however, which provides for jurisdiction over suits "between . . . citizens of different States," 28 U. S. C. § 1332 (a) (1), the 1789 statute provided for jurisdiction over suits "between a citizen of the State where the suit is brought, and a citizen of another State." 1 Stat. 78. Thus the litigants were effectively confined to the district of residence of one of them, by the jurisdictional grant though not by the venue statutes. This restriction was eliminated in 1875, when a number of important changes were made in the Judiciary Act, see n. 5, *infra,* and the relevant clause of the grant of diversity jurisdiction was rephrased in its present form, 18 Stat. 470.

The original venue provisions remained essentially unchanged until 1875, when Congress substantially revised the Judiciary Act and greatly expanded the scope of federal jurisdiction. 18 Stat. 470.[5] In describing the class of cases subject to venue restrictions, the 1875 statute dropped the phrase "suit . . . against an inhabitant of the United States" and substituted "suit . . . against any person." This Court held, however, that the change was stylistic and not substantive, and that Congress did not thereby bring suits against aliens within the scope of the venue laws. *In re Hohorst*, 150 U. S. 653 (1893).

The Court offered two reasons in *Hohorst* for concluding that suits against aliens remained outside the scope of the venue laws. First, no contemporary significance appears to have attached to the relevant change in language in 1875.[6] Second, and perhaps more important, to hold the venue statutes applicable to suits against aliens would be in effect to oust the federal courts of jurisdiction in most cases, because the general venue provisions were framed with reference to the defendant's place of residence or citizenship, and an alien defendant is by definition a citizen of no district.[7] The

---

[5] The jurisdiction of the federal courts was extended to include suits "arising under the Constitution or laws of the United States," *i. e.*, the federal-question jurisdiction now found in 28 U. S. C. § 1331 (a). And the diversity jurisdiction was rephrased, see n. 4, *supra*.

[6] *In re Hohorst*, 150 U. S. 653, 661 (1893), citing *In re Louisville Underwriters*, 134 U. S. 488, 492 (1890), and *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444, 448 (1892), for the proposition that the substitution "has been assumed to be an immaterial change."

[7] In 1875, the restrictions on venue in the federal courts were those imposed by the 1789 statute quoted in text: suit could be brought where the defendant was an inhabitant, or where he could be found. In 1887, however, Congress eliminated the provision authorizing suit wherever the defendant could be found: federal-question cases could be brought only where the defendant was an

*Hohorst* Court reasoned that it should not lightly be assumed that Congress intended that result, in light of the fact that the venue provisions are designed, not to keep suits out of the federal courts, but merely to allocate suits to the most appropriate or convenient federal forum.[8]

The reasoning of *Hohorst* with respect to suits against aliens continues to have force today. It remains true today that to hold the venue statutes applicable here would in effect oust the federal courts of a jurisdiction clearly conferred on them by Congress. Moreover, in the 79 years since *Hohorst* was decided, Congress has never given the slightest indication that it is dissatisfied

"inhabitant," and diversity cases only where either the plaintiff or the defendant resides. 24 Stat. 552. A suit against an alien was not regarded as a true diversity suit, and hence it was necessary to satisfy the requirements of federal-question venue, *i. e.*, residence of the defendant. *Hohorst, supra*, at 660.

Today the general venue provisions for federal-question and diversity cases appear in 28 U. S. C. §§ 1391 (a) and (b); they follow the 1887 statute, except that Congress has added a provision for venue where "the claim arose," see n. 8, *infra*.

[8] There have been, and perhaps there still are, occasional gaps in the venue laws, *i. e.*, cases in which the federal courts have jurisdiction but there is no district in which venue is proper. One such gap arose in connection with cases involving multiple plaintiffs and defendants. Venue was fixed at the residence of the defendant, or in diversity cases at the residence of the plaintiff as well. When there were multiple plaintiffs or defendants, the district of residence for venue purposes was the district where *all* plaintiffs or *all* defendants reside. *Smith* v. *Lyon*, 133 U. S. 315 (1890). If they resided in different districts then there was no proper venue. In 1966 Congress acted to close the gap with a provision authorizing suit where "the claim arose," 80 Stat. 1111, which in most cases provides a proper venue even in multiple-party situations. The development supports the view that Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other. Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap.

with the longstanding judicial view that the 1789 language continues to color the venue statutes, with the result that suits against aliens are outside the scope of all the venue laws.

## II

Petitioner argues that by enacting 28 U. S. C. § 1400 (b), Congress indicated a legislative intent to reject that rule in patent cases, and regulate the venue of suits against aliens in that limited class of cases. There is support for petitioner's argument in the broad language of prior decisions of this Court. Twice before, the Court has refused to apply venue provisions of general applicability to patent infringement cases. In *Stonite Prods. Co.* v. *Lloyd Co.*, 315 U. S. 561 (1942), the Court declared that what is now § 1400 (b) is "the exclusive provision controlling venue in patent infringement proceedings." *Id.*, at 563. *Stonite* held that venue in patent cases is not affected by what is now § 1392 (a), which relaxes certain restrictive venue rules in cases involving multiple defendants.[9] Similarly, in *Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U. S. 222 (1957), the Court asserted that "28 U. S. C. § 1400 (b) is the sole and exclusive provision controlling venue in patent infringement actions," emphasizing its character as "a special venue statute applicable, specifically, to *all* defendants in a particular type of actions," *id.*, at 228, 229 (emphasis in original). *Fourco* held that venue in patent cases is not affected by § 1391 (c), which expands for general venue purposes the definition of the residence of a corporation.[10]

---

[9] Section 1392 (a), originally 11 Stat. 272 (1858), affords some relief in a very small class of cases that fall in the gap described in n. 8, *supra*. When multiple defendants reside in different districts *within the same State,* the suit may be brought in any one of them.

[10] Section 1391 (c), enacted 62 Stat. 935 (1948), provides:
"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such

The analysis in each case rested heavily on the legislative history of § 1400 (b). Prior to 1893, patent infringement cases had been widely, though not universally, regarded as subject to the general federal venue statutes. *Chaffee* v. *Hayward,* 20 How. 208, 215–216 (1858). This Court cast doubt on that proposition, however, in the *Hohorst* case, *supra.* We have already noted that *Hohorst* held the general venue limitations inapplicable to a suit against an alien defendant.[11] In further support of the decision, however, the Court noted that the suit was based on a claim for patent infringement; the venue restrictions, said the Court, were intended to apply only to that part of the federal jurisdiction that was concurrent with state court jurisdiction, and not to patent suits, which are entrusted exclusively to the federal courts.

The apparent effect of the decision was to hold that patent infringement suits could be tried in any district, even when the defendant was not an alien. After *Hohorst,* there was great confusion on this point in the lower courts.[12] Congress responded promptly, creating a special new venue statute for the occasion: patent infringement claims were to be heard only in the district where the defendant was an inhabitant, or the district where he committed acts of infringement and also maintained a regular and established place of business. 29 Stat. 695 (1897), now codified as 28 U. S. C. § 1400 (b). The new provision was of course more restrictive than the law as it was left by *Hohorst,* but it was rather less restrictive than the general venue provision then applicable to claims arising under

---

judicial district shall be regarded as the residence of such corporation for venue purposes."

   [11] See *supra,* at 709–710.

   [12] See *Stonite Prods. Co.* v. *Lloyd Co.,* 315 U. S. 561, 564–565 (1942); conflicting decisions collected at 29 Cong. Rec. 1901 (1897).

federal law.[13]   Over the objections of some legislators, who could see no reason for treating patent suits differently from any other federal-question litigation,[14] Congress took the opportunity to establish for patent infringement suits a special and separate venue statute. Thus it is fair to say, as the Court did in *Stonite* and *Fourco,* that in 1897 Congress placed patent infringement cases in a class by themselves, outside the scope of general venue legislation.

But that analysis sheds no light on the present case. For it totally misconceives the origin and purpose of § 1391 (d) to characterize that statute as an appendage to the general venue statutes, analogous to the provisions at issue in *Stonite* and *Fourco.*   Section 1391 (d) is not derived from the general venue statutes that § 1400 (b) was intended to replace.   Section 1391 (d) reflects, rather, the longstanding rule that suits against alien defendants are outside those statutes.   Since the general venue statutes did not reach suits against alien defendants, there is no reason to suppose the new substitute in patent cases was intended to do so.   Indeed, the only glimmer of evidence of legislative intent points in the other direction.   We have no reliable indication of what Congress thought about the matter in 1875, when it

---

[13] Venue in a federal-question case was at that time proper only where the defendant was an inhabitant, 24 Stat. 552 (1887), as corrected, 25 Stat. 434 (1888).   Thus, the new statute gave patent claimants an advantage by authorizing as an additional venue alternative any district where the defendant maintained a regular place of business, and committed acts of infringement.   Ironically, changes in the general venue law have left the patent venue statute far behind.   Since 1948, the general venue law has authorized suit against a corporate defendant not only where he maintains a "regular and established place of business," as in § 1400 (b), but also where he is "doing business."   62 Stat. 935, now § 1391 (c).   And since 1966, the general venue law has authorized suit where "the claim arose," see n. 8, *supra.*

[14] See 29 Cong. Rec. 1901 (remarks of Cong. Payne).

dropped the language that expressly excluded suits against alien defendants from the general venue statutes, or in 1897, when it enacted the special patent venue statute. But in 1948, Congress was apparently quite content to leave suits against alien defendants exempt from the venue statutes, in patent cases as in all others. In that year, Congress codified as § 1391 (d) the rule exempting suits against aliens from the federal venue statutes. The Reviser's Notes, which provide the principal guide to interpretation of the 1948 Judicial Code, explain the intent to codify a rule that commands the "weight of authority," citing a pair of district court cases. These cases hold that the general venue laws do not control in a suit against an alien defendant, nor does the special patent venue law. *Sandusky Foundry & Machine Co.* v. *De-Lavaud,* 251 F. 631 (ND Ohio 1918); *Keating* v. *Pennsylvania Co.,* 245 F. 155 (ND Ohio 1917).

### III

We conclude that in § 1391 (d) Congress was stating a principle of broad and overriding application, and not merely making an adjustment in the general venue statute, as this Court found Congress had done in *Stonite* and *Fourco.* The principle of § 1391 (d) cannot be confined in its application to cases that would otherwise fall under the general venue statutes. For § 1391 (d) is properly regarded, not as a venue restriction at all, but rather as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special.

That rule, which has prevailed throughout the history of the federal courts, controls this case. Since respondent Brunette is an alien corporation, it cannot rely on § 1400 (b) as a shield against suit in the District of Oregon. The judgment of the Court of Appeals is

*Affirmed.*