Lawrence SARF, Trustee in Bankruptcy of Dynamite Food Enterprises, Inc., a Bankrupt, Plaintiff,

v.

Kenneth ARNOVITZ, Nacham Kahan, Kal Mendelowitz, Harold Kaplan, Saul Kaplan, Melvin Ufberg, Howard Fragin, Max Wortzberger, and Harry Israel, Defendants.

No. 81 C 4181.

United States District Court,
E. D. New York.

March 17, 1982.

Finkel, Goldstein & Berzow by Benjamin Finkel, New York City, for plaintiff.

Cullen & Dykman by C. Gayden Wren, Garden City, N. Y., for defendants Harold Kaplan, Saul Kaplan, Melvin Ufberg, and Howard Fragin.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

In November 1981 the trustee in bankruptcy of Dynamite Food Enterprises, Inc. ("Dynamite"), commenced this action as an adversary proceeding before Bankruptcy Judge Duberstein, pursuant to Bankruptcy Rule 701 et seq. The provisions of the old bankruptcy act governed the matter, since the involuntary petition was filed in March 1978, before the effective date of the new Code. Essentially, the proceeding sought to recover alleged fraudulent conveyances and voidable preferences made by and to the defendants, four of whom, Harold Kaplan, Saul Kaplan, Howard Fragin and Melvin Ufberg (collectively, "the moving defendants"), reside in Scranton, Pennsylvania, and were served there with copies of the summons and complaint by first class, pre-paid mail, as authorized by Bankruptcy Rule 704(c).

Before answer, these defendants moved to dismiss the proceeding for want of jurisdiction, on the ground that the trustee's lack of actual or constructive possession of the property alleged to have been fraudulently conveyed or subject to a preferential payment at the time the bankruptcy petition was filed, and their own refusal to consent to the bankruptcy court's jurisdiction, made the proceeding "plenary," not "summary," and therefore brought it outside the bankruptcy court's jurisdiction. See *MacDonald v. Plymouth County Trust Co.*, 286 U.S. 263, 266, 52 S.Ct. 505, 506, 76 L.Ed. 1093 (1931); 2 Collier on Bankruptcy ¶ 23.15[7] at 622 (14th ed.). Judge Duberstein sustained the moving defendants' ob-

jections, and without dismissing the case, transferred it pursuant to Bankruptcy Rule 915(b) to this court. Defendants have now moved pursuant to Rule 12(b), F.R.Civ.P., to dismiss the action for want of personal jurisdiction, improper service of process and improper venue.

Defendants' affidavits in support, and that of Kenneth Arnovitz in opposition to the motion, disclose the following pertinent facts which are not in substantial dispute. Howard Fragin, Melvin Ufberg, and Howard and Saul Kaplan, who are brothers, all reside in Scranton, Pennsylvania, where Kenneth Arnovitz also resides. In the early spring of 1977, Arnovitz, together with the defendants Kahan and Mendelowitz and another, formed two corporations for the purpose of participating as food vendors in summer lunch programs that the States of New York and Connecticut operated to feed needy children, using funds provided by the United States Department of Agriculture. The ventures were to operate separately, Heavenly Foods in Connecticut, and the now bankrupt Dynamite in New York, and outside financing was sought for each.

After an unavailing preliminary meeting with Saul Kaplan, Arnovitz continued discussions with the Kaplan brothers and later Fragin and Ufberg. With the help of a Scranton attorney, John Appleton, the five formed a Pennsylvania business trust with Arnovitz as trustee. The four other defendants were to contribute money which Arnovitz determined would be needed to carry out the trust's business purpose. Although not stated in the agreement, all understood initially that this purpose was the financing of Heavenly Foods in Connecticut. These discussions and the formation of the trust all took place in Pennsylvania; and the Kaplans, Fragin and Ufberg together contributed $180,000 to the trust, through deposits made in a Pennsylvania bank.

By early July 1977, Heavenly had failed to secure any contracts for the Connecticut program, and Arnovitz met with the moving defendants in Pennsylvania to discuss using the funds to enable Dynamite to par-

ticipate in the New York program. Arnovitz affirmed that before agreement to the change could be reached, the moving defendants (but not Saul Kaplan, whose interests allegedly were being looked out for by his brother) came to New York to inspect Dynamite's operations in Maspeth, Queens County, and then negotiated "at great length" to modify the existing understanding so as to permit Dynamite to use the funds first earmarked for Heavenly. The reply affidavits of Ufberg and Harold Kaplan confirm the visit on July 6, 1977, but assert that the "negotiations" Arnovitz described were in effect nothing more than ratification of a *fait accompli,* since the money the moving defendants had put into the trust for the Connecticut program was already being applied to the New York operation, and the four could not get their money out except by repayment from Dynamite. The details of the understanding were then worked out in writing by Appleton, the Scranton attorney who had drawn up the trust agreement.

During the next two months Arnovitz operated Dynamite and allegedly acted as the moving defendants' "trustee" in "overseeing" their investments. In September 1977, Arnovitz drew checks on a New York bank payable to himself as trustee, which he then used to repay the moving defendants some of the money they had contributed. Later, in February 1978, Arnovitz met with Fragin and Ufberg in a New York restaurant and handed them checks he had gotten certified at a New York bank. The Kaplans received their checks in Pennsylvania. The amounts received are the claimed fraudulent conveyances and voidable preferences.

The first question raised on this motion is whether the extraterritorial service of process by mail upon the moving defendants in the bankruptcy court remains adequate now that the action has been transferred here. There is no question that defendants received actual notice through the mailed service, or that the mode of service was authorized by Rule 704(c) of the Rules of Bankruptcy Procedure, or that pursuant to Rule 704(f)(1) the summons and complaint in an adversary bankruptcy proceeding could be "served anywhere within the United States."

On the other hand, as the Advisory Committee Note to Rule 704(f)(1) indicates, 11 U.S.C.A., Rule 704 at 73 (West 1977), the rationale supporting nationwide service of process in a straight bankruptcy proceeding is the same as that long used to justify such service in reorganization proceedings, *viz.,* that the bankruptcy court's assumption of jurisdiction over property in actual or constructive possession of the debtor at the time the petition was filed, coupled with the statutory power (and command) to preserve and safeguard it, wherever located, entailed necessarily the power to enjoin interferences therewith, and also, again necessarily, the power to serve process to accomplish that end. See *Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pac. Ry.,* 294 U.S. 648, 682–84, 55 S.Ct. 595, 608–09, 79 L.Ed. 1110 (1935). The keystone of the rationale, however, is the actual or constructive presence of property in the custody of the bankruptcy court.

■ In this case, the complaint made no colorable allegation that the property sought to be recovered was in the custody of the bankrupt when the petition was filed. Therefore, the bankruptcy court concededly was without subject matter jurisdiction to entertain the action, unless the defendants consented. But they did not, and moved to dismiss. Of course, it was "appropriate," Bankruptcy Rule 915(b), for the bankruptcy judge to transfer the action rather than dismiss it outright, since federal district court jurisdiction unquestionably was available over the claims. And while such a transferred proceeding, by the same rule, "shall continue as if filed as a civil action in the district court on the date it was filed in the court of bankruptcy," *id.,* this cannot be taken to validate an extraterritorial service of process by mail where such service is inconsistent with the applicable rules of procedure, including territorial limitations on process.

■ Nationwide service of process by mail is only permitted in a "summary proceeding" and would have been unavailable to the trustee had he elected to sue in district court in the first instance. See *In re Continental Mortgage Investors*, 465 F.Supp. 614, 617 (D.Mass.1979). For the trustee to bootstrap himself into a validly obtained jurisdiction over non-resident defendants on the ground of the Rule 915(b) transfer, and defendants' receipt of actual notice prior to the transfer, ignores the distinction that Congress and the courts have maintained between "plenary" and "summary" proceedings. Accordingly, the questions of personal jurisdiction and sufficiency of service of process must be measured against the requirements of the Federal Rules of Civil Procedure.

The mere mailing of the summons and complaint to the individual defendants was clearly inadequate under Rule 4(c), (d)(1), even if it gave actual notice. See *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972). Under the authority of that case, however, *see also Alexander v. Unification Church*, 634 F.2d 673, 679 (2d Cir. 1980), there still remains a question whether there is long-arm jurisdiction over these defendants. See *In re Continental Mortgage Investors, supra*, 465 F.Supp. at 617.

■ Jurisdiction over Ufberg and Fragin is clearly available under CPLR § 302(a)(2), since they came into New York to pick up certified checks which allegedly are part of the claimed fraudulent conveyances and preferences. Furthermore, these two defendants and the Kaplans are subject to jurisdiction under CPLR § 302(a)(1), because they all[1] visited Dynamite in July 1977 for the purpose of seeing what was being done with the money they had contributed to the trust. They then decided after discussions with Arnovitz that their only course was to leave their money in Dynamite on the understanding that after Arnovitz's own investment was repaid, they would be repaid out of any "additional" funds coming into the corporation. Although this understanding was later embodied in a written agreement drawn up in Pennsylvania by Appleton and signed in that State, the critical factor here, as in *Lehigh Valley Industries Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975), and *Bastille Properties Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 176–77 (S.D.N.Y. 1979), is that the "negotiations significantly advance[d] the making of a . . . contract of importance." *ECC Corp. v. Slater Electric Inc.*, 336 F.Supp. 148, 152 (E.D.N.Y.1971). See also *Liquid Carriers Corp. v. American Marine Co.*, 375 F.2d 951, 955–56 (2d Cir. 1967).

■ Although the foregoing demonstrates that proper service of process can be made upon the moving defendants under New York's long-arm statute, defendants have also raised the matter of venue. Jurisdiction of the case is founded upon the Bankruptcy Act and "not solely on diversity of citizenship," 28 U.S.C. § 1391(b), and therefore venue is proper "only in the judicial district where all defendants reside, or in which the claim arose." *Id.* Venue based upon the residence of the defendants is not possible in the case as presently constituted because the four moving defendants are resident in the Middle District of Pennsylvania, while at least two of the remaining defendants reside in one or another of the districts in New York.

We must decide, therefore, in which district "the claim arose." The parties have suggested two choices, the Middle District of Pennsylvania, which the moving defendants naturally favor, and this district, which the bankruptcy trustee favors. The Supreme Court recently construed § 1391(b) in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–87, 99 S.Ct. 2710, 2716–18, 61 L.Ed.2d 464 (1979). It stated:

---

1. Although Saul Kaplan never personally came into this jurisdiction, his brother did, and it is Arnovitz's undisputed affirmation that Howard Kaplan had authority to speak for his brother Saul when the decision was made in July 1977 to leave the money in the New York lunch program. CPLR § 302(a) does not require that the transaction of business be conducted only in person, but it is enough that it was done through an agent, which, on the present record, Howard was for Saul.

"The statute allows venue 'in the judicial district ... in which the claim arose.' Without deciding whether the language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts.... Rather, it restricted venue either to the residence of the defendants or to 'a place which may be more convenient to the litigants'—*i.e.*, both of them—'or to the witnesses who are to testify in the case.' S.Rep.No. 1752, 89th Cong., 2d Sess. 3 (1966). See *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen* [387 U.S. 556,] 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 [(1967)]. See also *Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710, 92 S.Ct. 1936, 1939, 32 L.Ed.2d 428. In our view, therefore, the broadest interpretation of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that a claim arose in only one specific district, a plaintiff may choose between those (or conceivably more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim." 443 U.S. at 185, 99 S.Ct. at 2717 (citations and footnotes omitted).

This teaching calls for an analysis of where the litigation may be conducted most conveniently to all involved—parties and witnesses. Cf. 28 U.S.C. § 1404(a) (transfer of venue). More specifically, the Court equated "district in which the claim arose" with that district "which may be more convenient" for the parties and witnesses than the residence of the defendants. In this connection, it bears remembering also that the Court in *Leroy* reiterated the view earlier expressed in *Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710 & n.8, 92 S.Ct. 1936, 1939 & n.8, 32 L.Ed.2d 428 (1972), that the 1966 amendment of the venue statute permitting suit to be maintained where "the claim arose" did no more than to close a venue gap in federal question suits involving multiple defendants from several States, without further broadening a plaintiff's choice of forum. 443 U.S. at 184, 99 S.Ct. at 2716–17.

The claims in the present case are to recover fraudulent conveyances or voidable preferences allegedly received or made by each of nine defendants. Arnovitz is a Pennsylvania resident, and while he allegedly defaulted in the bankruptcy court, he clearly will be an important witness in the litigation. The four moving defendants all reside in Pennsylvania, and, presumably, will testify concerning their understanding of the agreements involved, and awareness of the financial status of Dynamite before receiving any payments. These defendants have also indicated that they will call the Scranton attorney, Appleton, to testify about the negotiations in which he was involved relating to the trust agreement. Two personal attorneys of the defendants may also testify.

The other four defendants are now all claimed to be New York residents (Finkel Aff. of Feb. 19, 1982, ¶ 4), although the complaint alleges that Wortzberger and Israel are Pennsylvania residents. Wortzberger has not yet been served, Israel and Mendelowitz allegedly never responded to the summons and complaint and therefore "defaulted." Only Nacham Kahan has answered, admitting he was one of Dynamite's principal stockholders, officers and directors with Arnovitz and Mendelowitz. The alleged basis of the liability of Wortzberger and Israel is similar to that of the moving defendants—they contributed money now claimed to be "investments" and, therefore, allegedly received fraudulent conveyances and preferential payments. Kahan's liability is based in part on that theory and largely on his role in the corporation. Mendelowitz's liability is based on his role as a corporate officer, director and stockholder who permitted the conveyances and preferences to be made.

Besides these four defendants, not all of whom are clearly New York residents, plaintiff has indicated it will call another Dynamite stockholder and former officer and the accountant Dynamite originally retained, to testify as to their understanding of the role defendants were to play, and another attorney to testify about Dynamite's corporate organization and meetings held with the incorporators and Arnovitz. The trustee also has pointed out that the relevant bankruptcy records relating to Dynamite are located in the Eastern District.

 In these circumstances, the Court cannot conclude that the trustee has satisfied his burden of demonstrating that venue is proper in this district.[2] Although defendants did things which are a sufficient basis for a court in New York to exercise long-arm jurisdiction, the convenience of the parties and witnesses points more to the Middle District of Pennsylvania than to this district as the proper venue for this suit. More of the defendants and witnesses are located there, and it was in that district that the moving defendants participated in the negotiations which led to the understanding that resulted in the alleged fraudulent conveyances and voidable preferences. While the bankruptcy record relating to Dynamite undoubtedly may prove relevant, there has been no showing how essential it will be, or that the record could not be made available in Pennsylvania.

The moving defendants' motion to dismiss for lack of jurisdiction is accordingly denied, and their motions to dismiss for improper service and venue are granted. Since other defendants are alleged to reside in New York, and it is not clear that the entire action could be transferred to Pennsylvania, 28 U.S.C. § 1406(a), the action against the moving defendants is dismissed.

SO ORDERED.

The Clerk of Court is directed to forward copies of this memorandum of decision and order to counsel for the parties.

---

**2.** The two main treatises disagree as to which party has the burden of showing whether or not venue in a district is proper. With each acknowledging the existence of authority *contra*, C. Wright, A. Miller & E. Cooper, 15 Federal Practice and Procedure, § 3826 at 168 (1976), favor decisions that put the burden on a plaintiff to support his choice of venue, while Professor Moore argues it is the defendant who should establish that venue is improper. 1 Moore's Federal Practice ¶ 0.140[1.—4] at 1319 ·20 (1981).

Little analysis is adduced to support the more numerous decisions which have approved the former view. Professor Moore's rationale is that venue is a privilege personal to a defendant, which, unlike subject matter jurisdiction, need not be pleaded, and that it therefore may be considered a matter of defense which it is fair to make a defendant prove. But the same may be said also of the manner in which process is served, and the matter of personal jurisdiction, which are also "dilatory" defenses under rule 12(b), and courts routinely have considered the burden to be upon a plaintiff to establish personal jurisdiction or proper service. See, *e.g., Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.,* 454 F.Supp. 858 (S.D.N.Y.1978). Accordingly, the Court accepts that the "better view," *Ryan v. Glenn,* 52 F.R.D. 185, 192 (N.D.Miss.1971), is indeed that the burden on venue is the plaintiff's. Compare, however, *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978) (burden on motion to transfer venue is upon moving party).