UNITED STATES of America ex rel. Jeffrey THISTLETHWAITE and Jeffrey Thistlethwaite, Plaintiffs,

v.

DOWTY WOODVILLE POLYMER, LIMITED, Richard Walker and Michael Thompson, Defendants.

No. 94 Civ. 3521(LLS).

United States District Court, S.D. New York.

Aug. 11, 1997.

As Amended Aug. 26, 1997.

Engel & McMarney, New York City (Thomas E. Engel, of counsel), for Plaintiff Jeffrey Thistlethwaite.

U.S. Atty., New York City (Jonathan A. Willens, Gideon A. Schor, of counsel), for U.S.

Crowell & Moring, Washington, DC (Peter J. Romatowski, Stephen J. Byers, of counsel), Richards, Spears, Kibbe & Orbe, New York City (Linda Imes, of counsel), for Defendants.

## OPINION AND ORDER

STATON, District Judge.

Jeffrey Thistlethwaite, a resident of England, brought this action in 1994 on behalf of the United States of America under the *qui tam* provisions of the False Claims Act ("the FCA"), 31 U.S.C. §§ 3729 *et seq.*, against Dowty Woodville Polymer, Limited ("Dowty"), an English corporation, and two of its employees, Richard Walker and Michael Thompson, who are residents of England. The United States later joined the action as a plaintiff. Defendants moved to dismiss the complaint on various grounds, and the court granted the motion on the ground that it lacked subject matter jurisdiction over the claims, 911 F.Supp. 130 (S.D.N.Y.1996), and entered judgment dismissing the complaint. The Court of Appeals for the Second Circuit vacated that judgment and remanded for further proceedings. *See United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 868 (2d Cir.1997).

Defendants renew their motion to dismiss the complaint on two remaining grounds: that this court lacks personal jurisdiction over them, and that the Southern District of New York is a inconvenient forum for the litigation.

## BACKGROUND

The amended complaint alleges the following.

Dowty manufactures wing slot seals used in variable geometry or "swing wing" aircraft. Beginning in the 1980s, Dowty entered into contracts to develop and supply the seals to a California corporation, Rockwell International Corporation ("Rockwell"), for use in aircraft that Rockwell manufactured for the United States Air Force ("Air Force"). Dowty also entered into contracts with the Air Force at McClellan Air Force Base in California and at Tinker Air Force Base in Oklahoma to supply the seals for use in aircraft at those bases. Defendant Richard Walker, a project manager at Dowty and later a director and general manager there, and defendant Michael Thompson, a commercial manager and later a financial manager there, both repeatedly travelled to California and Oklahoma in connection with the negotiation and execution of those contracts. Dowty ultimately provided thousands of seals to the Air Force for over $52 million. Jeffrey Thistlethwaite, a business manager at Dowty from 1989 to 1992, then discovered that Dowty had fraudulently overcharged the Air Force and its contractor, Rockwell, by inflating its costs, on which the price of the seals was based.

The complaint asserts that the defendants made false and fraudulent statements to the Air Force and Rockwell in violation of the FCA and the Truth in Negotiations Act, 10 U.S.C. § 2306(a), and also asserts federal common law claims of breach of contract, unjust enrichment, and payment made under mistake of fact.

## DISCUSSION

### I. Personal Jurisdiction

Defendants claim that the FCA does not authorize this court to exercise personal jurisdiction over them and that, even if it did,

the exercise of jurisdiction over them would violate due process.

### A. Statutory authorization of service of process

In actions brought under section 3730 of the FCA, as here, the FCA provides:

> Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

31 U.S.C. § 3732(a) (1997).

The first sentence refers to venue. *See United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 110 F.3d 861, 866 (2d Cir.1997). The second sentence limits the exercise of personal jurisdiction by providing that while a summons may be served anywhere, it may issue only from an "appropriate" district court. The statute does not define "appropriate," but it appears from the context that "appropriate" refers back to the first sentence of section 3732(a), which describes where venue is appropriate.

■ In this case, venue is appropriately laid in this district because defendants are aliens. Under the Alien Venue Act, "[A]n alien may be sued in any district." 28 U.S.C. § 1391(d). That Act applies even in view of the venue provision in section 3732. The Supreme Court made that Act's broad application clear in *Brunette Machine Works, Ltd. v. Kockum Indus.,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972), holding that the Act applied in patent infringement suits even though the patent statute had a provision restricting venue to specific districts. *Id.* at 714, 92 S.Ct. at 1941. The Court observed that the Alien Venue Act established "a principle of broad and overriding application" and that there was no showing of a congressional intent to limit that principle in patent infringement suits. *Id.* In this case, the Court of Appeals' discussion of the FCA's venue provision leaves no room to argue that there was any congressional intent to limit the application of the Alien Venue Act in FCA suits. *See* 110 F.3d at 866–68.

■ Because venue is proper in this district, this court is an "appropriate district court" within the meaning of section 3732(a). That provision therefore authorized this district court to issue the summons with which defendants were served.

### B. Constitutional limits on personal jurisdiction

■ For this court to exercise personal jurisdiction over defendants, those defendants must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'tradition notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Where, as here, there is a federal statute that permits worldwide service of process, the relevant inquiry is whether the defendants have minimum contacts with the United States as a whole. *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir.1994) (listing cases); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 314 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

■ Defendants had extensive contacts with the United States relating to the contracts at issue. Dowty entered into contracts with parties in the United States, and several of those contracts stated that they were to be governed by United States law. Dowty communicated by mail and telephone with those United States parties, sent them the seals, sent them invoices, and received large payments from them. Defendants Walker and Thompson participated in the negotiation of those contracts and travelled repeatedly to Oklahoma and California to meet with representatives of the United States parties to those contracts.

■ Those contacts show purposeful availment of the United States. A court evaluat-

ing contacts with the United States as a whole "must examine the extent to which defendants availed themselves of the privileges of American law, the extent to which litigation in the United States would be foreseeable to them, the inconvenience to defendants of litigating in the United States, and the countervailing interest of the United States in hearing the suit." *Texas Trading*, 647 F.2d at 314. Dowty's sale and delivery of seals to the United States and Walker's and Thompson's trips there show their purposeful availment of that forum. Litigation there was foreseeable to them if, accepting the allegations in the complaint as true, they made false or fraudulent statements to the representatives of the United States parties. The alleged harm to the United States as a party gives the United States as a forum a strong interest in the litigation, and the inconvenience to defendants of litigating here is no more than could have been expected given their international commercial contract. *See Texas Trading*, 647 F.2d at 315 (where the Republic of Nigeria contracted with several nations and provided that payment would be made in the United States and then was sued there, "the inconvenience was at least expected").

Defendants contend that their contacts with the United States should not render them subject to jurisdiction in any United States district court, "including halfway around the world in the District of Guam." (Defendant's Br. at 30.) However, defendants are not being sued in Guam, but in New York. They have not shown that proceeding in New York poses such unreasonable burdens on them as would violate due process.

In asserting that defendants' contacts with the forum are "continuous and systematic," plaintiffs appear to assert that this court may exert "general jurisdiction," which exists where a nonresident has contacts with a forum of such a "continuous and systematic" nature that it may be sued in that forum on a claim even if the claim does not arise out of or relate to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & n. 9, 104 S.Ct. 1868, 1872–73 & n. 9, 80 L.Ed.2d 404 (1984) (discussing general jurisdiction). Whether or not defendants' contacts are sufficiently continuous and systematic to permit the exercise of general jurisdiction, they are sufficiently significant and related to the claims for this court to exercise "specific jurisdiction" over defendants with respect to those claims. *See id.* at 414 & n. 8, 104 S.Ct. at 1872 & n. 8 (defining "specific jurisdiction" as "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"); *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir.1996) (specific jurisdiction requires "a lesser degree of contact with the state" than general jurisdiction).

## II. Forum Non Conveniens

Defendants move to dismiss this action on the ground of *forum non conveniens*, claiming that the Southern District of New York is an unduly burdensome forum for defendants, that England is a more suitable forum, and that Thistlethwaite's choice of forum is not entitled to any deference because he is a resident of England.

■ Dismissal of an action on the ground of *forum non conveniens* "will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981). "At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Id.* at 254 n. 22, 102 S.Ct. at 265 n. 22. If there is a suitable alternative forum, the court must then consider the litigants' private interests and the public interest and determine whether the balance of those factors strongly favors the defendant, requiring dismissal. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

### A. Alternative forum

■ Ordinarily, a forum is a suitable alternative "when the defendant is 'amenable to process'" there. *Piper*, 454 U.S. at 254 n.

22, 102 S.Ct. at 265 n. 22 (quoting *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. at 842). "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.

■ England is a suitable alternative forum for plaintiffs' claims. There is no dispute that defendants are amenable to process in England. Both sides have submitted declarations from English counsel who agree that an English court could hear the claims, although it is unclear whether the English court would apply United States law to the claims or require plaintiffs to assert the claims in tort or contract. (House Decl. ¶¶ 5–8; Harris Decl. ¶¶ 10, 12, 14, 16.) Neither English counsel suggests that the English court could not hear the subject matter of the dispute.

Plaintiffs' protest that the English forum is not an adequate alternative because the law that the English court would apply is markedly less favorable to plaintiffs than the law that would be applied in this court. They point out that English law prohibits treble damages, which the FCA permits; that in an English court Thistlethwaite could not maintain his status as a party to the claims and therefore could not recover a portion of the United States' recovery, as he may under the FCA; and that in an English court the claims may be more difficult to prove because the English tort law that might apply to the claims requires a greater showing of *scienter* than the FCA requires. (Harris Decl. ¶¶ 15, 19, 20.)

■ Those differences in England's substantive law do not render England an inadequate forum. "The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry," *Piper*, 454 U.S. at 247, 102 S.Ct. at 261, unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254, 102 S.Ct. at

265. In *Piper*, the Supreme Court held that the plaintiffs, who had filed wrongful death actions in California after a plane crash in Scotland, would not be deprived of a remedy if the case were brought in Scotland, even though they might recover less in damages in Scottish courts and might not be able to rely on a strict liability theory since those courts had not recognized that theory. *Id.* at 254–55, 102 S.Ct. at 265. Here, neither the higher degree of *scienter* that plaintiffs might be required to establish in an English court nor the unavailability of treble damages in that court shows that the English courts would deprive plaintiffs of a remedy. *See Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir.1987) (holding that it was "irrelevant" to the *forum non conveniens* inquiry that plaintiffs "could not get triple damages if they proved the frauds underlying their RICO claim in the Philippines"). Nor does the lack of an equivalent *qui tam* status for relator Thistlethwaite in the English courts show that those courts are inadequate, since those courts can hear, without Thistlethwaite, the subject matter of the claims and can provide a remedy for the United States, which is the party on whose behalf Thistlethwaite brought this suit.

**B. Deference to choice of forum**

■ "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper*, 454 U.S. at 255, 102 S.Ct. at 265–66. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Id.* at 255–56, 102 S.Ct. at 266.

■ Defendants argue that Thistlethwaite's choice of this forum is entitled to no deference because he is a resident of England. Nevertheless, this forum is clearly convenient for the other plaintiff, the United

States. The convenience of the forum to the United States as a party is important even though Thistlethwaite chose the forum, because the central purpose of the *forum non conveniens* inquiry is not to determine whether the forum was properly chosen but "to ensure that the trial is convenient." *Id.*

### C. Private interests of the litigants

■ Important considerations in the *forum non conveniens* inquiry regarding the private interests of the litigants include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

It is unclear whether bringing this suit in England would afford the parties greater access to sources of proof than proceeding in this court. Defendants claim that the claims turn on pricing information in documents maintained in England and on the testimony of English witnesses involved in such pricing. Plaintiffs contend that there is also substantial proof in the United States. They claim that there is relevant information in contract documents that the Air Force formerly maintained at bases in California and Oklahoma and that have since been moved to New York. In addition, Thistlethwaite claims that relevant documents may be held by two American corporations, Rockwell and General Dynamics, to which Dowty supplied seals identical to those it later supplied to the Air Force. He also claims that a San Diego company that was Dowty's sole supplier of scrim used in the seals, Scharr Industries, may have evidence relevant to the plaintiffs' claim that Dowry grossly overstated the amount of scrim it needed to manufacture the seals. In sum, there might be relatively easier access to sources of proof in England than here, but it appears that there are enough relevant documents in the United States that it is difficult to say whether England is a superior forum in this respect.

The second *Gilbert* factor, whether there are unwilling witnesses not subject to the process of the forum, moderately favors an English forum. Defendants contend that the witnesses who are not subject to the process of this court include some of Dowty's retired employees, some retired Air Force employees, and persons it calls the "most important witnesses in the case, the auditors of the Ministry of Defence in the United Kingdom who acted as the agent of the United States in reviewing the records of Dowty Woodville Polymer prior to the negotiation of every contract at issue." (Letter to court from counsel for defendants dated April 7, 1997, at pp. 1–2.) Thistlethwaite contends that it is unclear under English law whether those auditors would be permitted to give any testimony at all. Plaintiffs also observe that testimony from English witnesses unwilling to travel to the United States can be obtained by letters rogatory. *Cf. R. Maganlal & Co. v. M.G. Chemical Co.,* 942 F.2d 164, 169 (2d Cir.1991) (noting that the unavailability of witnesses was not a sufficiently weighty concern to require *forum non conveniens* dismissal because "any testimony MG needs from witnesses whose attendance cannot be compelled can be obtained, for example, though the use of letters rogatory"). In addition, defendants do not suggest that the American witnesses whom they suggest are not amenable to process in this court are any more amenable to process in England. Accordingly, it appears that an English court may be moderately superior than this court to the extent that its process reaches Dowty's former employees who are unwilling to testify and also, perhaps, the auditors whom defendants consider so important.

A remaining factor, the cost of obtaining willing witnesses, favors neither party, since the cost of transporting willing English witnesses to this court appears no greater than the cost of transporting American witnesses to England. Though the American witnesses are not New York residents, defendants have not shown that England is a closer or more convenient forum for those witnesses than New York.

Overall, the balance of the private interests of the litigants is in rough equipoise, perhaps slightly favoring the English forum.

### D. Public interest factors

 "Factors of public interest also have place in applying the doctrine" of *forum non conveniens. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Those factors include the relationship between the forum and the litigation, since there is "a local interest in having localized controversies decided at home," *id.* at 509, 67 S.Ct. at 843, and any administrative difficulty that the case poses for the court, *id.,* such as the court's lack of familiarity with the law that is to govern the dispute. *Piper,* 454 U.S. at 260, 102 S.Ct. at 268.

Both those factors strongly favor a United States forum. This forum has a clear interest in this suit, since it involves claims of substantial fraud committed against the government of this country. The suit presents no administrative difficulty for this court, as it appears to call for the application of United States law. In contrast, as suggested by both English counsel mentioned earlier, an English court might conclude that United States law applies, with which it would be less familiar.

In sum, while the private interests of the litigants somewhat favor an English forum, the public interests strongly favor a United States forum. Because the balance does not clearly favor defendants, their motion to dismiss on the ground of *forum non conveniens* is denied.

### CONCLUSION

Defendants' motion to dismiss on the grounds of lack of personal jurisdiction and *forum non conveniens* is denied.

So ordered.