In the

# United States Court of Appeals

## For the Seventh Circuit

—————

No. 06-1934

DAVE ARNETT,

*Petitioner-Appellant,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

—————

Appeal from the United States Tax Court
No. 8866-03

—————

ARGUED NOVEMBER 6, 2006—DECIDED JANUARY 16, 2007

—————


Before RIPPLE, WILLIAMS and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Petitioner Dave Arnett was employed by Raytheon Corporation and stationed in Antarctica for the calendar year 2001. When he filed his tax return for that year, he claimed an exclusion for income earned in a foreign country under 26 U.S.C. § 911 ("section 911") for the income he earned while working in Antarctica. The Internal Revenue Service ("IRS") assessed a deficiency for this exclusion based on its view that Antarctica is not a "foreign country" for purposes of section 911. Mr. Arnett challenged that deficiency in the Tax Court. The Tax Court sustained the IRS' position. For

the reasons set forth in this opinion, we affirm the judgment of the Tax Court.

## I

## BACKGROUND

The facts of this case are not in dispute. Mr. Arnett, a resident of Hayward, Wisconsin, was employed by Raytheon Support Services Co., which provided support services under contract with the National Science Foundation at McMurdo Station, Ross Island, Antarctica. When he filed his tax return for income received during tax year 2001, Mr. Arnett claimed that, by virtue of section 911, he was entitled to exclude $48,894 in income received from his work in Antarctica. On March 7, 2003, the IRS sent Mr. Arnett a notice of deficiency, stating that he was not permitted to exclude the income that he had received from his work in Antarctica because Antarctica is not a foreign country within the meaning of section 911. Mr. Arnett contested the IRS' conclusion in the Tax Court.

In the Tax Court, the Commissioner of Internal Revenue ("Commissioner") moved for summary judgment, contending that, under the treasury regulations then in effect, only territory under the sovereignty of a foreign nation is considered a "foreign country" for purposes of section 911. *See* 26 C.F.R. § 1.911-2(h). The United States neither makes any claim to sovereignty nor recognizes any other nation's claims of sovereignty over Antarctica. *See* Antarctic Treaty art. IV, Dec. 1, 1959, 12 U.S.T. 794; *Smith v. United States*, 507 U.S. 197, 198 n.1 (1993). Thus, the Commissioner submitted, under the applicable treasury regulations Antarctica is not a foreign country for purposes of section 911. Relying on *Chevron U.S.A., Inc. v. Natural Resources*

*Defense Council*, 467 U.S. 837 (1984), the Tax Court deferred to the Commissioner's interpretation of section 911, embodied in IRS regulations, and held that, for purposes of section 911, the term "foreign country" applied only to territory within the sovereignty of a foreign country. The Tax Court therefore concluded that, because Antarctica was not within the sovereign territory of any foreign country, Mr. Arnett could not exclude income earned for services rendered in Antarctica.

## II

## DISCUSSION

### A.

In challenging the Tax Court's holding, Mr. Arnett makes two arguments. First, he submits that the term "foreign country" is not ambiguous and therefore there is no need for deference to the IRS' regulation defining the term. In Mr. Arnett's view, the word "foreign country" unambiguously includes Antarctica. Secondly, Mr. Arnett submits that, even if the statute is ambiguous, the language of the regulation does not support the Tax Court's conclusion that Antarctica is not a "foreign country" for purposes of section 911. We begin our assessment of these contentions by first examining the statute in question and the methodology mandated by the Supreme Court's cases for resolving the issues before us.

Under section 911, qualified individuals may exclude, within statutory limits,[1] foreign earned income from their

---

[1] For calendar year 2001 the exclusion was limited to $78,000. 26 U.S.C. § 911(b)(2)(D)(i). In calendar year 2002, the limit

(continued...)

gross income. 26 U.S.C. § 911(a)(1), (b)(2)(D). Foreign earned income is defined in the statute as amounts received "from sources within a foreign country" for services performed by the taxpayer. *Id.* § 911(b)(1)(A). The Internal Revenue Code ("IRC") does not define "foreign country." The Commissioner, therefore, has issued regulations to define this term. These regulations were promulgated under a specific grant of statutory authority to prescribe regulations to carry out the purposes of section 911, *id.* § 911(d)(9), and under the IRC's general grant of authority to prescribe rules to enforce the provisions of the IRC, *id.* § 7805(a). *See* 48 Fed. Reg. 33,007 (July 20, 1983). These regulations define "foreign country" to include territory under the sovereignty of a foreign nation. *See* 26 C.F.R. § 1.911-2(h). The Tax Court accorded this definition *Chevron* deference and concluded that Antarctica did not fall within the definition of a "foreign country" because the United States does not recognize Antarctica to be the sovereign territory of any foreign government.

Under the *Chevron* doctrine, we examine an agency's construction of a statute that it administers under a two-part analysis that mirrors Mr. Arnett's arguments. We first ask "whether Congress has *directly spoken* to the precise question at issue," and second, "if the statute is silent or ambiguous with respect to the *specific issue*," whether the agency's construction is permissible. *Chevron*, 467 U.S. at 842-43 (emphasis added). When the statute grants the agency "an express delegation of authority . . . to elucidate

---

[1] (...continued)
increased to $80,000. *Id.* Beginning with calendar year 2007, the amount excludable will be adjusted each calendar year to account for inflation. *Id.* § 911(b)(2)(D)(ii).

a specific provision of [a] statute by regulation," the agency's construction of the statute is permissible, and the regulation will be controlling, unless the regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843-44; *see also United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). When the statute does not delegate rulemaking authority explicitly, we shall consider statutory ambiguities to be implicit delegations to the agency administering the statute to interpret the statute through its rulemaking authority. *See Mead*, 533 U.S. at 229; *Chevron*, 467 U.S. at 844. Such interpretation will be permissible, and we shall defer to it, so long as the interpretation is a reasonable construction of the statute. *Chevron*, 467 U.S. at 844.

**B.**

We must first determine whether the term "foreign country" is unambiguous. The term has been defined in other contexts by the Supreme Court. In *Smith v. United States*, 507 U.S. 197 (1993), the Court had to determine whether Antarctica was a foreign country for purposes of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80. That statute states that the United States' waiver of sovereign immunity does not apply to "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k); *see also Smith*, 507 U.S. at 201. In its examination of the issue, the Court explicitly noted that the dictionary definition of "country" which it noted, "[a] region or tract of land," was "not the only possible interpretation of the term." *Id.* (quoting *Webster's New International Dictionary* 609 (2d ed. 1945)) (internal quotation marks omitted). Then, in order to arrive at a definition of "country" for purposes of the FTCA, the Court examined the rest of the FTCA. *Id.*

First, the Court noted that the FTCA's provisions operated both as a waiver of sovereign immunity and as a choice of law provision. *Id.* The Court reasoned that, if Antarctica were not a foreign country under the statute, the FTCA would waive the United States' sovereign immunity in Antarctica and, at the same time, direct the district "courts to look to the law of a place that has no law in order to determine the liability of the United States," a result the Court found "bizarre." *Id*. at 201-02. Additionally, the FTCA's venue provisions would result in a waiver of sovereign immunity but provide no venue when a person injured in Antarctica did not reside in the United States. *Id.* at 202. The Court found that this result was incompatible with the presumption that "Congress does not in general intend to create venue gaps." *Id*. at 202-03 (quoting *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710 n.8 (1972)) (internal quotation marks omitted). The Court also noted that, because the FTCA is a limited waiver of sovereign immunity, the Court should not "extend the waiver beyond that which Congress intended." *Id.* at 203 (quoting *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979)) (internal quotation marks omitted). Lastly, the Court found important the presumption against extraterritorial application of statutes. *Id.* at 203-04.

In short, in order to give meaning to the term "foreign country" in the FTCA, the Supreme Court focused in *Smith* on the purpose and operation of the FTCA. The Court's resort to the statute's context in order to give meaning to the term undercuts Mr. Arnett's claim that the term "foreign country" unambiguously includes Antarctica.[2]

---

[2] The Supreme Court's methodology in *Smith v. United States,* 507 U.S. 197 (1993), also makes clear that we cannot rely di-

(continued...)

*Smith* demonstrates that the term "foreign country" has meaning only when that term is interpreted in the particular statutory context in which it appears.

The conclusion that the term "foreign country" is inherently ambiguous is certainly validated by an examination of the text of section 911. Here, the appropriate meaning of the term is even more difficult to discern from the statutory context. Indeed, the text of section 911 provides no indication of the proper definition of "foreign country" or whether Antarctica should be considered a foreign country.

## C.

Because we conclude that the term "foreign country," as employed in section 911, is ambiguous, we must examine whether the IRS' interpretation, as set forth in its regulations, is permissible. In doing so, we must remember that *United States v. Mead Corp.*, 533 U.S. 218 (2001), requires that we give great deference to the interpretation of the Commissioner. *See id.* at 218; *see also Chevron*, 467 U.S. at 842-43.[3]

---

[2] (...continued)
rectly on that precedent to give meaning to the term "foreign country." Indeed, the Supreme Court recently has emphasized that a prior judicial interpretation of a statutory term will foreclose *Chevron* deference only if the "judicial precedent hold[s] that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 125 S. Ct. 2688, 2700 (2005).

[3] We also note that the text of section 911 expressly delegates to the Commissioner the power to "prescribe such regulations
(continued...)

The Commissioner submits that the regulation is reasonable under the *Chevron* doctrine. When evaluating the reasonableness of a rule issued by the Commissioner, we must assess "whether the regulation harmonizes with the language, origins, and purpose of the statute." *Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998). Of course, we must also remember that exclusions from income are narrowly construed. *See Comm'r v. Schleier*, 515 U.S. 323, 328 (1995).

### 1.

The Commissioner's definition of "foreign country" is consistent with the congressional purpose underlying the exclusion. When Congress replaced the deduction for foreign earned income established by the Foreign Earned Income Act of 1978, Pub. L. No. 95-615, §§ 201-210, 92 Stat. 3097, 3098-3110 (1978), with the current exclusion,[4] it did so as a part of a legislative enactment intended to promote

---

[3] (...continued)

as may be necessary or appropriate to carry out the purposes of" section 911. 26 U.S.C. § 911(d)(9). The term "foreign country" is used throughout the section, including in definitions relating to who may take advantage of the exclusion. *See id.* § 911(d)(1). Given the importance of the term, it is certainly "appropriate" that the Commissioner define the term "foreign country." Under the most deferential standard we apply to rules issued under specific grants of authority, *see Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 979 (7th Cir. 1998), it is clear that the rule in question is within the Commissioner's delegated authority.

[4] *See* infra part II.C.2.

economic growth. *See* Staff of the Joint Committee on Taxation, *General Explanation of the Economic Recovery Tax Act of 1981* at 17 (J. Comm. Print 1981) [hereinafter "*General Explanation*"]. Congress viewed the added employment costs which flowed from providing employees with additional reimbursement to account for added tax burdens experienced by American citizens working abroad as an impediment to the competitiveness of United States companies overseas. *Id.* at 43. Congress also believed that American companies, in order to remain competitive overseas, would resort to hiring nationals of the countries in which they sought to compete, and that these nationals would, in turn, purchase fewer American-made goods than an American citizen in the same position overseas. *Id.* Given these legislative purposes, the Commissioner reasonably could have concluded that, because there would not be similar tax burdens in territories outside of the sovereignty of a foreign nation, limiting the definition of "foreign country" to those geographic areas under the sovereignty of a foreign nation would advance the goal of Congress.

**2.**

"[T]reasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *Cottage Sav. Ass'n v. Comm'r*, 499 U.S. 554, 561 (1991) (quoting *United States v. Correll*, 389 U.S. 299, 305-06 (1967)). The regulation in question originated in a rule issued in 1957, which read:

> *Definition of "foreign country"*. The term "foreign country" means territory under the sovereignty of a

> government other than that of the United States. It does
> not include a possession or Territory of the United
> States.

26 C.F.R. § 1.911-1(a)(9), (b)(7) (1957), 22 Fed. Reg. 6758, 6759 (Aug. 22, 1957). The statute relating to this rule remained largely the same until the Foreign Earned Income Act of 1978, Pub. L. No. 95-615, §§ 201-210, 92 Stat. 3097, 3098-3110 (1978), replaced the exclusion for foreign earned income with a deduction for foreign earned income.[5] *See General Explanation* at 41. Nevertheless, despite this change, the general requirements for the deduction were no different than those for the exclusion it replaced. *Id.* As a result of the Foreign Earned Income Act of 1978, the then existing 26 C.F.R. § 1.911-1 was deleted and replaced with regulations relating a new 26 U.S.C. § 911, the provisions of which are not pertinent here. *See* 44 Fed. Reg. 27,079, 27,080 (May 9, 1979). The definition of "foreign country" was moved to a new regulation related to the deduction for foreign earned income that replaced the old exclusion. *See* 26 C.F.R. § 5b.913-3(d) (1979), 44 Fed. Reg. 27,084 (May 9, 1979). The new regulation substantially followed the old definition, adding only a sentence that a "foreign country" included the air space above any territory under the sovereignty of a government other than that of the United States. *Id.*

In 1981, Congress eliminated the foreign earned income deduction created by the Foreign Earned Income Act of 1978 and reinstated the income exclusion at 26 U.S.C. § 911.

---

[5] The act placed the deduction in a new section, 26 U.S.C. § 913. The exclusion for foreign earned income had been codified previously at 26 U.S.C. § 911.

*See* Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, § 111, 95 Stat. 172, 190-94 (1981); *General Explanation* at 44. The 1981 act made no changes to the existing law relating to residence or the sort of income to which the exclusion applied. *See General Explanation* at 44. As a result of the 1981 act, the Commissioner issued a new regulation, 26 C.F.R. § 1.911-2(h), again defining "foreign country" with some clarification. *See* 48 Fed. Reg. 33,007, 33,011 (July 20, 1983). This rule provided the definition of "foreign country" in its present form:

> *Foreign country*. The term "foreign country" when used in a geographical sense includes any territory under the sovereignty of a government other than that of the United States. It includes the territorial waters of the foreign country (determined in accordance with the laws of the United States), the air space over the foreign country, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the foreign country and over which the foreign country has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources.

26 C.F.R. § 1.911-2(h).

In sum, although, over time, there have been some changes to the precise treatment of foreign earned income, these changes focused primarily on the manner in which that income would reduce the taxpayer's overall liability, not the type of income or class of individuals permitted to claim the exclusion or deduction. Additionally, the regulations defining "foreign country," although moved around to reflect changes in the IRC, remained largely unchanged substantially. Although the definition has become more detailed, the focus on sovereign ter-

ritory has remained constant. Such consistency is highly indicative of reasonableness. *See Cottage Sav.*, 499 U.S. at 561-62.

We must conclude, therefore, that the Commissioner's definition of "foreign country" is reasonable, and, accordingly, we must defer to the Commissioner's reading of the statute.

**D.**

We now turn to the ultimate question of whether the Commissioner is correct in determining that Antarctica is a "foreign country" under 26 C.F.R. § 1.911-2(h). Although we have deferred to the Commissioner's interpretation of the term "foreign country" embodied in 26 C.F.R. § 1-911.2(h), we cannot give the same deference to the Commissioner's conclusion in this regard because the conclusion that Antarctica is not a "foreign country" is not an "authoritative, prelitigation interpretation" of the rule. *See Cottage Sav.*, 499 U.S. at 562-63. We now turn to an examination of that question.

**1.**

At the outset, we think that it is important to note that considering Antarctica not to be a "foreign country" is compatible with the general statutory scheme. Notably, section 911 is found under subtitle A, chapter 1, subchapter N of the IRC, which is designated "Tax Based on Income from Sources Within or Without the United States." Part I of this subchapter, entitled "Source Rules and Other General Rules Relating to Foreign Income," deems any activity in Antarctica to be "space or ocean activity." In

turn, the United States is designated the source country of income from such activity when earned by a citizen of the United States. 26 U.S.C. § 863(d). Although this provision does not provide a definitive answer as to whether Antarctica is a "foreign country," it supports the conclusion that section 911 is not intended to apply to income earned for services provided in Antarctica.

We think it also important to note that the United States does not recognize any claims of sovereignty over Antarctica. *See Smith*, 507 U.S. at 198 n.1. Under the prior versions of the rules defining "foreign country" for purposes of foreign earned income, the Tax Court has held, and the IRS has ruled, that Antarctica is not a "foreign country." *See Martin v. Comm'r*, 50 T.C. 59, 62 (1968); *see also* Rev. Rul. 67-52, 1967-1 C.B. 186. Mr. Arnett does not challenge the rulings under the prior versions of the rules defining "foreign country," but instead contends that the current version of the rule defines "foreign country" differently than the rules in place at the time of *Martin*.

Prior to 1983, the rules defined "foreign country" to "mean[] territory under the sovereignty of a government other than that of the United States." 26 C.F.R. § 1.911-1(a)(9), (b)(7) (1957), 22 Fed. Reg. 6758, 6759 (Aug. 22, 1957). The rules now define "foreign country" to "*include*[] any territory under the sovereignty of a government other than that of the United States." 26 C.F.R. § 1.911-2(h) (emphasis added). Mr. Arnett submits that use of the term "includes" suggests that the rule now envisions a broader definition of "foreign country."

We cannot accept this view. The text, structure and history of the current rule do not support Mr. Arnett's interpretation. Although the current version of the rule

differs from the prior versions in its use of "includes" rather than "means," the sentence stating that the rule "includes any territory under the sovereignty of a government other than that of the United States" cannot be read in isolation. It would make little sense for a definition of "foreign country" that purports to reach all land outside of the United States, as Mr. Arnett suggests, to focus on the narrower category of land outside of the United States, composed only of territory within the sovereignty of a foreign nation.

When read in its entirety and in common sense fashion, the rule supports the position that sovereignty is an essential component of the definition a "foreign country" under 26 C.F.R. § 1.911-2(h). The definition itself goes on to elaborate those other areas included in the definition of a "foreign country," all of which are tied to claims of sovereignty by a foreign nation. The rule uses the word "includes" not only to reference territory within the sovereignty of a foreign nation, but also in reference to "territorial waters . . ., air space over the foreign country, and the seabed and subsoil . . . adjacent to the territorial waters . . . over which the foreign country has exclusive rights, in accordance with international law." 26 C.F.R. § 1.911-2(h). Each use of the word "includes" in the definition of "foreign country" is made in connection with some form of sovereign territorial rights.

Indeed, with respect to the word "includes," the definition of "foreign country" largely mirrors the rule's definition of "United States" in its usage of "includes." *See* 26 C.F.R. § 1.911-2(g). The rule defines the "United States" as:

> *United States.* The term "United States" when used in a geographical sense includes any territory under the sovereignty of the United States. It includes the

states, the District of Columbia, the possessions and territories of the United States, the territorial waters of the United States, the air space over the United States, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the United States and over which the United States has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources.

26 C.F.R. § 1.911-2(g). This definition of "United States" is found in the same rule, in the subsection immediately preceding the definition of "foreign country." Use of the same word in an interrelated regulation and in close proximity to one another "presents a classic case for application of the 'normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.' " *Comm'r v. Lundy*, 516 U.S. 235, 250 (1996) (quoting *Sullivan v. Stroop,* 496 U.S. 478, 484 (1990)) (some internal quotation marks omitted). If, as Mr. Arnett argues, the word "includes" renders the definition of "foreign country" so broad as to reach a limitless class of sovereign-less territory, a similar effect should be given to the use of "includes" in connection with the definition of "United States" to reach a similarly limitless class of sovereign-less territory.

Lastly, the Supreme Court's decision in *Smith* neither requires nor counsels that Antarctica be considered a "foreign country." The FTCA involves a number of significant considerations not present in the context of section 911. First, the FTCA directs district courts to apply the law of the place where the acts or omissions giving rise to the injury occurred in tort claims against the United States. 28 U.S.C. § 1346(b)(1). Antarctica lacks any

civil tort law of its own. *Smith*, 507 U.S. at 198. As a matter of statutory interpretation, the Court found it unlikely that, given this concern, Congress would have waived the sovereign immunity of the United States under the FTCA with respect to claims arising in Antarctica. *Id.* at 204-05. The Court also noted that Congress acted against a background presumption against extraterritorial application of United States laws. *Id.* at 204.

These concerns do not counsel the same result in the context of section 911. Like a waiver of sovereign immunity, exclusions from gross income are narrowly construed. *See Schleier*, 515 U.S. at 328. In the case of a waiver of sovereign immunity, a narrow construction means avoiding a construction that would broaden the waiver beyond what Congress intended. *See Smith*, 507 U.S. at 203. In the case of exclusions from gross income, a narrow construction means avoiding a construction which would exclude more income than Congress intended. Thus, narrow constructions of the FTCA and section 911 necessarily lead to different conclusions as to whether Antarctica is a "foreign country." A construction of section 911 that excludes Antarctica from the definition of "foreign country" does not exclude from, but includes within, gross income that income received for services provided in Antarctica. Moreover, unlike a broad construction of the FTCA, such a reading does not implicate the problem of extraterritorial application of United States law.

In sum, we believe that the Tax Court correctly determined that Antarctica is not a "foreign country" as that term is employed in the Commissioner's regulations.

**Conclusion**

Accordingly, we conclude that Antarctica is not a "foreign country" for purposes of section 911. The decision of the Tax Court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*