# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1838

UNIVERSITY OF CHICAGO HOSPITALS,

*Plaintiff-Appellee,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5120—**Matthew F. Kennelly**, *Judge.*

ARGUED OCTOBER 23, 2007—DECIDED SEPTEMBER 23, 2008

Before BAUER, CUDAHY, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. The University of Chicago Hospitals ("UCH") brought this refund action against the United States to recover taxes it paid in 1995 and 1996 under the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §§ 3101-3128, on behalf of its medical residents. UCH maintains it is entitled to a refund because its residents qualified for the "student exception" from FICA tax under the Internal Revenue Code ("IRC"), 26 U.S.C. § 3121(b)(10),

and the controlling Treasury Regulation in place during the relevant time period, 26 C.F.R. § 31.3121(b)(10)-2.

The district court agreed initially to entertain the government's motion for summary judgment on the question of whether medical residents are categorically *not* "students" under § 3121(b)(10) and therefore not exempt from FICA tax as a matter of law. If the answer to this question was "no"—that is, if residents *may* qualify for the student exception—then the case would proceed on the question of whether *UCH*'s residents were students within the meaning of § 3121(b)(10).

The district court rejected the government's argument that residents were per se ineligible for the student exception and certified its order for immediate appeal under 28 U.S.C. § 1292(b). We granted the government's petition for interlocutory appeal and now affirm. The student exception unambiguously does *not* categorically exclude medical residents as "students" potentially eligible for exemption from payment of FICA taxes. Even if we were to consider the statute ambiguous, the implementing Treasury Regulation applicable at the time and entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), sets forth a method for determining eligibility for the student exception—one that focuses on the character of the employing organization as a school, college, or university and the relationship of the employee-student to that organization. This necessarily implies a case-specific analysis, not a categorical ineligibility for certain classes of employee-students.

### I.  Background

UCH is a not-for-profit Illinois corporation affiliated with the University of Chicago. Like many hospitals in the United States, UCH administers graduate medical-education programs for residents in various specialties. Although the role of medical residents at hospitals varied throughout the twentieth century, today residents are generally recent graduates of medical schools who perform services at hospitals as the last step in their medical training for the purpose of gaining expertise in patient care and in their chosen specialty. Many states require at least one year of residency before granting an unrestricted license to practice medicine, and a standard residency lasts three to seven years, depending upon the specialty. Most teaching hospitals require their residents to take classes in the form of lectures and demonstrations, and to submit to regular evaluations by senior doctors. Medical-residency programs are accredited by the Accreditation Council for Graduate Medical Education. *See* Accreditation Council for Graduate Medical Education, http://www.acgme.org/acWebsite/newsRoom/ACGMEfactsheet.pdf (last visited August 26, 2008).

UCH filed timely requests for refunds of the FICA taxes paid on behalf of its medical residents for the years 1995 and 1996, citing the "student exception," 26 U.S.C. § 3121(b)(10). After the IRS took no action, UCH filed this refund action, seeking $5,572,705 it had paid in FICA contributions for its residents in those years. The district court bifurcated the proceeding, first addressing the government's argument that medical residents were

categorically ineligible for the student exception as a matter of law. If the court agreed with this argument, UCH would lose; if not, the case would proceed on the specific question of whether UCH's residents qualified for the student exception.

The district court answered the threshold legal question "no," rejecting the government's argument that residents were per se precluded from qualifying as students under § 3121(b)(10). The court thus denied the government's summary judgment motion and certified its order for immediate appeal under 28 U.S.C. § 1292(b). The government petitioned for leave to bring an interlocutory appeal. This court granted that request, and this appeal followed.

## II. Discussion

Our standard of review is de novo. *330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 994 (7th Cir. 2000) (court of appeals reviews the district court's decision on "summary judgment, as well as its interpretation of the tax code, de novo"). FICA taxes fund the Social Security Trust Fund and are levied on wages. *See* 26 U.S.C. §§ 3101(a) & (b), 3111(a) & (b). "Wages" are defined as "remuneration for employment." 26 U.S.C. § 3121(a). "Employment," in turn, means "any service, of whatever nature, performed . . . by an employee for the person employing him." 26 U.S.C. § 3121(b). These definitions are extremely broad; the statute also contains numerous exceptions exempting certain enumerated employment relationships from FICA tax liability. At issue here is the so-called "student exception," which provides:

[Employment] shall not include . . . .

    (10) service performed in the employ of—

      (A) a school, college, or university, or

      (B) an organization described in section 509(a)(3) if the organization is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of a school, college, or university and is operated, supervised, or controlled by or in connection with such school, college, or university . . .

    if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university.

26 U.S.C. § 3121(b)(10).

The government maintains that medical residents are per se ineligible for the student exception. It makes a very brief textual argument in support of this position, asserting that "it is scarcely the most natural reading of the word 'student' to interpret it as applying to a medical resident" because a resident already has a medical degree and has "merely entered a post-medical school residency program at a hospital." Likewise, the government adds, a hospital is not a "school, college, or university" in "the most common sense of those words." We are unpersuaded. A teaching hospital like UCH may indeed be regarded as part of the university with which it is affiliated for purposes of the student exception. And medical-school graduates participating in postgraduate medical residencies at university hospitals may be regarded as

students within the meaning of the statute even though they already possess a medical degree. Simply put, there is nothing in the statute itself that categorically excludes medical residents from eligibility for the student exception. Stated differently, the student exception, by its terms, does not preclude medical residents from attempting to bring themselves within the exemption from FICA tax liability.

The vast bulk of the government's argument rests on inferences drawn from statutory and legislative history—more specifically, the statutory and legislative history of a *different* FICA tax exception, one pertaining to medical *interns*, codified at 26 U.S.C. § 3121(b)(13), which was repealed in 1965. To prevail on this argument, the government must establish that the statute is ambiguous, and further, that the implementing Treasury Regulation applicable during the relevant time period is an impermissible interpretation of the statute. *Arnett v. Comm'r*, 473 F.3d 790, 793 (7th Cir. 2007) (citing *Chevron*, 467 U.S. at 842-43). It has done neither.

We note initially that the district court implicitly concluded that the statute is ambiguous and then deferred to the Treasury Regulation under *Chevron*. The district court apparently saw ambiguity in the statute's failure to specifically address whether medical residents may qualify for the student exception. But the statute's silence on the specific subject of medical residents does not necessarily mean it is ambiguous. The interpretation the government advances—that the student exception is categorically inapplicable to residents—is textually untena-

ble for the reasons we have already stated. We agree with the Eleventh Circuit that the student exception, § 3121(b)(10), "[b]y its plain terms . . . does not limit the type[ ] of services that qualify for the exemption." *United States v. Mount Sinai Med. Ctr.*, 486 F.3d 1248, 1252 (11th Cir. 2007).

Even if we were to conclude that the statute's silence on the subject of medical residents makes it ambiguous on the question of whether residents as a class are ineligible for the student exception, we would turn first to the applicable Treasury Regulation. Treasury regulations promulgated pursuant to the "IRC's general grant of authority to prescribe rules to enforce the provisions of the IRC" are entitled to deference if "the agency's construction of the statute is permissible." *Arnett*, 473 F.3d at 793; *see also Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 977-83 (7th Cir. 1998) (discussing the levels of deference given to tax regulations promulgated pursuant to specific and general statutory grants of authority, revenue rulings, and private letter rulings). A regulation is permissible and "will be controlling, unless the regulation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Arnett*, 473 F.3d at 793 (quoting *Chevron*, 467 U.S. at 843-44). That is, a regulation "will be permissible, and we shall defer to it, so long as the interpretation is a reasonable construction of the statute." *Id.*

The Treasury Regulation applicable during the relevant time period provides as follows:

> (b) For purposes of this exception, the amount of remuneration for services performed by the employee

in the calendar quarter, the type of services performed by the employee, and the place where the services are performed are immaterial. The statutory tests are (1) the character of the organization in the employ of which the services are performed as a school, college, or university . . . and (2) the status of the employee as a student enrolled and regularly attending classes at the school, college, or university . . . .

(c) The status of the employee as a student performing the services shall be determined on the basis of the relationship of such employee with the organization for which the services are performed. An employee who performs services in the employ of a school, college, or university, as an incident to and for the purpose of pursuing a course of study at such school, college, or university has the status of a student in the performance of such services . . . .

26 C.F.R. § 31.3121(b)(10)-2 (1975). The regulation thus prescribes a case-specific test for whether the student exception applies, one that focuses on the character of the employing organization as a school, college, or university, and its relationship to the employee claiming student status. The amount the employee is paid, the type of services performed, and the place where services are performed are immaterial.

The government does not suggest that § 31.3121(b)(10)-2 is unreasonable, arbitrary, capricious, or invalid. It argues instead that the regulation "has no application" to medical residents and therefore we may simply disregard

it, never mind the question of its entitlement to deference.[1] Again, the government's argument proceeds from inferences about the statutory and legislative history of the student exception *and* the intern exception. That is, the government maintains that the Treasury Regulation must be read in light of the legislative history of the student and intern exceptions, which establishes (so the argument goes) that Congress intended to categorically exclude medical residents from eligibility for the student exception. This legislative history, the government concludes, demonstrates that the Treasury Regulation—and the case-specific tests it specifies—does not apply to medical residents.

In addition, the government notes that the regulation was revised, effective April 1, 2005, to provide that an employee who works at least 40 hours per week is considered a full-time employee and not eligible for the student exception because his services are deemed not "incident to and for the purpose of" a course of study. *See* T.D. 9167, 2005-1 C.B. 261, Treas. Reg. § 31.3121(b)(10)-2(d)(3) (2005). Acknowledging that the new regulation is not applicable here, the government nevertheless maintains that it adopts a "per se approach" that necessarily excludes medical residents since "no medical resident . . . today works less than 40 hours per week." Therefore, the

---

[1] The government's argument in this regard makes it unnecessary for us to determine what particular level of deference is called for in this case. *See Bankers Life*, 142 F.3d at 977-83 (discussing the difference between tax regulations promulgated pursuant to specific and general statutory grants of authority).

government argues, the new regulation implements "the congressional intent of precluding medical residents . . . from being eligible for the student exception."

We will set aside for the moment the unconventional nature of this approach to *Chevron* deference and the oddity of arguing that an inapplicable regulation somehow demonstrates that the applicable regulation does not apply. We have already concluded that § 3121(b)(10) unambiguously does *not* exclude medical residents from eligibility for the student exception. Accordingly, we need not entertain this foray into legislative history. For the sake of completeness, however, we will briefly sketch the legislative activity regarding the student and intern exceptions on which the government relies.

The student exception was enacted in 1939 as an amendment to the 1935 Social Security Act, *see* Internal Revenue Code of 1939, § 1426(b)(10)(iii), 53 Stat. 1360, 1385 (1939), and at that time Congress also enacted a specific FICA exception for medical interns. Subsequently codified at former 26 U.S.C. § 3121(b)(13) (1964), the intern exception exempted from FICA taxation "services performed as an interne [sic] in the employ of a hospital by an individual who has completed a four year[ ] course in a medical school chartered or approved pursuant to State Law." Internal Revenue Code of 1939, § 1426(b)(13), 53 Stat. 1360, 1385 (1939). The intern exception established a categorical FICA exemption for services rendered by

medical interns.[2]

In 1965 Congress repealed the intern exception. *See* Social Security Amendments of 1965, Pub. L. No. 89-97, § 311, 79 Stat. 286, 381 (1965). The government cites certain statements in House and Senate Reports reflecting congressional concern about Social Security coverage for "young doctors" and their families. The government views the legislative history surrounding the repeal of the intern exception as broadly establishing congressional intent regarding medical residents, who are also "young doctors." The government contends that the repeal of the per se exception for interns must be understood to mean that Congress intended both interns *and* medical residents to be per se ineligible for the student exception.

This argument relies on non sequiturs. The student exception was wholly unaffected by the repeal of the intern exception, and the repeal of the intern exception implied nothing about whether either interns *or* residents might bring themselves under the student exception. Moreover, UCH notes a statement in the House Report accompanying the repeal of the intern exception that

---

[2] In 1964 the Sixth Circuit held that the intern exception did not apply to medical residents because of the distinctions between interns and residents that existed in 1939. *St. Luke's Hosp. Ass'n v. United States*, 333 F.2d 157, 161 (6th Cir. 1964). The court noted that the differences between interns and residents had since become "blurred," but held nonetheless that residents were not eligible for the per se intern exemption. *Id.* at 164. The court's opinion did not discuss the student exception.

leaves open the possibility that interns might qualify for other FICA exemptions: "The effect of this amendment [repealing the intern exception] is to extend coverage under the Federal Insurance Contributions Act to such interns *unless their services are excluded under provisions other than section 3121(b)(13).*" H.R. REP. NO. 89-213, 216 (1965), *reprinted in* 1965-2 C.B. at 747 (emphasis added).

We need not, in any event, attempt to reconcile the statutory and legislative history of the intern exception with the student exception, § 3121(b)(10), or the applicable Treasury Regulation, § 31.3121(b)(10)-2. For the reasons we have already stated, the statute unambiguously does not categorically exclude medical residents from eligibility for the student exception. To the extent the statute is ambiguous, the regulation calls for a case-specific test for eligibility that focuses on the character of the employing organization as a school, college, or university, and its relationship with the employee claiming student status. The regulation reflects a permissible construction of the statute (the government does not argue otherwise) and is plainly applicable here, the government's argument about the repeal of the intern exception notwithstanding.

Accordingly, we join the Eleventh Circuit in holding that the student exception, § 3121(b)(10), is not per se inapplicable to medical residents as a matter of law; rather, a case-by-case analysis is required to determine whether medical residents qualify for the statutory exemption from FICA taxation. *Mount Sinai Med. Ctr.*, 486 F.3d at 1253; *see also Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) (reaching a similar conclusion regarding medical residents at a

state hospital, construing a student exception contained in an agreement between the State of Minnesota and the Commissioner of Social Security pursuant to 42 U.S.C. § 418(a)(1)). The judgment of the district court is AFFIRMED.