*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

   *v.*

DETROIT MEDICAL CENTER,

     *Defendant-Appellant.*

No. 07-1602

> Appeal from the United States District Court
> for the Eastern District of Michigan at Detroit.
> No. 05-71722—Arthur J. Tarnow, District Judge.

Argued: April 30, 2008

Decided and Filed: February 26, 2009

Before: BATCHELDER, SUTTON, and FRIEDMAN, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:** Charles N. Raimi, DETROIT MEDICAL CENTER, Detroit, Michigan, for Appellant. Teresa E. McLaughlin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Charles N. Raimi, DETROIT MEDICAL CENTER, Detroit, Michigan, Dennis M. Haffey, DYKEMA GOSSETT, Bloomfield Hills, Michigan, for Appellant. Teresa E. McLaughlin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Ted T. Martin, BAKER & HOSTETLER, Cincinnati, Ohio, for Amici Curiae.

_____

**OPINION**

_____

  FRIEDMAN, Circuit Judge. The ultimate question in this case is whether the Social Security Act covers physicians participating as medical residents in a graduate

---

  [*] The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

training program conducted by a hospital group jointly with a university. The issue arises in a suit by the United States against the hospital group to collect social security taxes under the Federal Insurance Contributions Act ("FICA") on the stipends the hospital group pays to the residents. The district court granted summary judgment for the United States, ruling (1) that the stipends were wages and not scholarships or fellowships, and therefore not exempt from income tax, and (2) that the residents did not qualify for the exemption from social security tax for "students." We affirm in part, vacate in part and remand the case to the district court for further proceedings.

I

The appellant, Detroit Medical Center ("Detroit Medical"), operates seven hospitals in the Detroit metropolitan area. It sponsors a graduate medical training and education program jointly with Wayne State University ("Wayne State"). This program provides training to medical residents in numerous areas of medicine. In Michigan, two years of post-graduate medical training are required before a doctor can take a state medical board examination.

Each resident signs a Residency Agreement that contractually sets forth the duties and responsibilities of Detroit Medical, Wayne State, and the resident. The resident agrees, among other things, to "provide care commensurate with his or her level of advancement and general competence" and to "assume responsibility for teaching and supervising other residents or students." Detroit Medical gives the resident an annual stipend of slightly more than $40,000 and also agrees to provide "living quarters" for residents on call, meals to "on-call resident[s] required to spend the night" and liability insurance. Detroit Medical receives funding for its residency program from Medicare, Medicaid and Blue Cross. It does not charge patients for the care the residents provide.

The residents are supervised by a large number of physicians who are on the Wayne State faculty. The program is conducted in conformity with the standards promulgated by the Accrediting Council for Graduate Medical Education.

In its federal returns for 1995 to 2003, Detroit Medical paid social security taxes on its medical residents' stipends. In 2004, Detroit Medical sought a refund of the taxes it paid for three quarters of 2003, which the United States granted. On further review, however, the government concluded that the refunds had been erroneous. The United States sued Detroit Medical in the United States District Court for the Eastern District of Michigan to recover those refunds totaling more than $15 million. Detroit Medical counterclaimed for the social security taxes on the stipends it had paid for 1995 through 1997 and 2002 and 2003.

In a 30-page opinion, the district court granted the government's motion for summary judgment, awarded the government the amounts it had refunded, and dismissed Detroit Medical's counterclaim.

The court first held that the stipends paid to the residents were "wages," not "scholarships" or "fellowships" that allegedly are not subject to social security taxes. The court stated that "the residents' stipends are given as a substantial quid pro quo for patient care" because "residents are contractually required to perform valuable patient care services." It also ruled that because the stipends are an "all or nothing proposition," i.e., residents are required to care for patients in order to receive the stipends, no portions of them could be excluded from taxation as attributable to the time spent in actions other than patient care.

The court then held that the residents were not "students" "at a school, college, or university" who, under the statute, would be exempt from social security taxes. The court held that both the statutory provisions and the relevant Treasury Regulations are ambiguous on whether Detroit Medical's residents qualify for the student exemption and that resort to the legislative history therefore was appropriate. The court "f[ou]nd that permitting medical residents to qualify for the student exception would lead to just such result that is inconsistent with the intent of Congress. That is, medical interns would be covered by FICA whereas medical residents would not."

II

Although this is a tax case, the underlying question is whether the Social Security Act covers Detroit Medical's residents.

In determining the meaning of the applicable provisions of the Internal Revenue Code, the Supreme Court has pointed out: "The very specificity of the exemptions … and the generality of the employment definitions indicates that the terms 'employment' and 'employee,' are to be construed to accomplish the purposes of the legislation …a constricted interpretation of the phrasing by the courts … would invite adroit schemes by some employers and employees to avoid the immediate burdens at the expense of the benefits sought by the legislation." *United States v. Silk*, 331 U.S. 704, 711-12 (1947) (footnote omitted). As this court stated in *St. Luke's Hosp. Ass'n v. United States*, 333 F.2d 157, 164 (6th Cir. 1964), "in dealing with the beneficent purposes of the Social Security Act, this court generally favors that interpretation of statutory provisions which calls for coverage rather than exclusion." Also relevant are the well-settled principles that "exemptions from taxation are to be construed narrowly," *Bingler v. Johnson*, 394 U.S. 741, 752 (1969) and "do not rest upon implication," *U.S. Trust Co. v. Helvering*, 307 U.S. 57, 60 (1939), but "must be unambiguously proved," *United States v. Wells Fargo Bank*, 485 U.S. 351, 354 (1988). In construing and applying those provisions, therefore, we must keep in mind that the underlying question is whether Congress intended the Social Security Act to cover Detroit Medical's residents.

III

A. Section 3101 of Title 26 of the United States Code imposes a tax on the "wages" of employees for "old-age, survivors and disability insurance and hospital insurance." Section 3111 imposes a similar tax on employers on the "wages" they pay. "Wages" are defined in § 3121(a) as "all remuneration for employment" (with certain exceptions not here involved), and "employment" is defined in § 3121(b) as "any service, of whatever nature, performed by an employee for the person employing him …except that such terms shall not include -------." This is followed by a number of exceptions, one of which for "students" we discuss in Part IV, below.

Detroit Medical contends that its residents' stipends are "scholarships" or "fellowships," which a statutory provision provides are not part of "gross income," and as such are not subject to FICA taxes.

Section 117 of Title 26 provides in relevant part:

(a)  General rule.  Gross income does not include any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii).

(b)  Qualified Scholarship.  For purposes of this section --

(1)  In general. The term "qualified scholarship" means any amount received by an individual as a scholarship or fellowship grant to the extent the individual establishes that, in accordance with the conditions of the grant, such amount was used for qualified tuition and related expenses.

…

(c)  Limitation.

Subsections (a) and (d) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services by the student required as a condition for receiving the qualified scholarship or qualified tuition reduction.

Section 170(b)(1)(A)(ii) refers to "an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on."

In other words, for Detroit Medical's residents' "stipends" to constitute "qualified scholarships" that are not part of gross income, the amounts must have been "used for qualified tuition and related expenses" and the residents must have been "candidate[s] for a degree at an educational organization" that "normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at a place where its educational activities are regularly carried on."

Detroit Medical's theory apparently is that if the stipends are "scholarships" or "fellowships" and therefore not part of "gross income" under § 117, then they were not "wages" subject to FICA taxes under § 3101 and § 3111. That is an arguable and perhaps a persuasive position, but the conclusion does not automatically follow from the premises. Congress could have determined that although it would not include "scholarships" in "gross income" (and therefore not subject them to the income tax), they would be subject to FICA taxes. We need not resolve that question here, however, since we conclude that Detroit Medical has not established that the stipends were "scholarships" or "fellowships" under § 117.

B. In *Bingler v. Johnson*, *supra*, the Supreme Court considered the application of these provisions in an earlier version of § 117 to an employer program under which the employees were given paid "educational leave" for postgraduate education. The Court upheld as valid a Treasury regulation that "limits the definitions of 'scholarship' and 'fellowship' so as to exclude amounts received as 'compensation,'" 394 U.S. at 748. The Court held that the definitions of those terms in the regulation "comport[ed] … with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." *Id.* at 751. The Court ruled that "the jury here properly found that the amounts received by the respondents were taxable 'compensation' rather than excludable 'scholarships.'" *Id.* at 755-56, footnote omitted. The Court explained:

> most importantly, Westinghouse [the employer] unquestionably extracted a *quid pro quo*. The respondents not only were required to hold positions with Westinghouse throughout the 'work-study' phase of the program, but also were obligated to return to Westinghouse's employ for a substantial period of time after completion of their leave. The thrust of the provision dealing with compensation is that bargained-for payments, given only as a '*quo*' in return for the *quid* of services rendered - whether past, present, or future - should not be excludable from income as 'scholarship' funds.

*Id.* at 757-58, footnotes omitted.

In the present case, the residents also gave Detroit Medical a *quid pro quo* in return for their stipends. The principal *quid* they furnished was the provision of patient

care services. Another item was teaching and supervision of other residents or students. The benefit the residents provided to Detroit Medical was substantial. If there had been no residents to provide patient care, presumably the hospitals would have been required to hire other physicians to do so. *Cf. Rockswold v. United States*, 620 F.2d 166, 169 (8th Cir. 1980) (amounts paid to physicians in advanced graduate medical degree programs at university not excludable from gross income as fellowship grant because "the payment was made as quid pro quo for the services rendered" and "there was sufficient evidence for the district court finding that the purpose of the fellowship grants was reimbursement for services and therefore there was quid quo pro.").

The *quid* in this case was somewhat different from that in *Bingler* in that here, in addition to benefitting Detroit Medical, the resident's activities also were part of their post-graduate training and education. In *Bingler*, on the other hand, the quid was solely for the benefit of the employer. This distinction, however, is not a valid basis for not applying the *quid-pro-quo* standard there enunciated. Since the residents were required to provide both the patient care and teaching services, the stipends cannot be viewed as "'no strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients" that characterizes "scholarships" and "fellowships." *Bingler*, 394 U.S. at 751.

C. Detroit Medical's argument has other fatal flaws. To qualify as a scholarship, the stipend must be paid to an individual "who is a candidate for a degree at an educational organization." 26 U.S.C. § 117(a). Detroit Medical's residents, however, are not candidates for a degree. Upon completing the residency, the resulting recognition is not a degree but a certificate that enables the resident to take the specialty board examination. Moreover, for the stipend to be a "qualified scholarship" under § 117(b)(1), it must have been "used for qualified tuition and related expenses." Detroit Medical's residents, however, do not pay tuition to either the hospital at which they work and train, or to Wayne State University. Detroit Medical "admit[ed]" that "[t]here were no restrictions placed on the use of the stipends paid to residents … ."

Moreover, since the residents are required to perform the services as a condition of receiving the stipends, the latter would be "services by the student required as a condition for receiving" the money, which under 26 U.S.C. § 117 (c) precludes it from being a "scholarship" or "fellowship."

In sum, the characteristics of the stipends Detroit Medical's residents received and the statutory provisions governing scholarships under the tax code establish that the stipends are not scholarships or fellowships under § 117.

IV

The remaining question is whether the residents qualify as "students" under 26 U.S.C. § 3121(b)(10), which is one of the exemptions from FICA taxes imposed on wages of employees. Section 3121(b)(10) exempts from FICA taxes "service performed in the employ of a school, college, or university if such service is performed by a student who is enrolled and regularly attending classes at such school, college or university."

At issue, then, is "[w]hether a medical resident is a 'student' and whether he is employed by a 'school, college, or university,'" which "depend on the nature of the residency program in which the medical residents participate and the status of the employer." *United States v. Mount Sinai Med. Ctr. of Fla.*, 486 F.3d 1248, 1252 (11th Cir. 2007). Although the student exception has two prongs—whether the individual is a "student" and whether such student is "enrolled and regularly attending classes" at a "school, college, or university"—these two elements are interrelated and affect each other.

The statute does not define "student" but merely specifies where and how the student must be studying for the exemption to apply. We assume that in the absence of a congressional definition of "student," this common word in § 3121 was intended to have its usual and ordinary meaning of a person pursuing studies at an appropriate institution, which the Act defines as a "school, college, or university" for the purposes of the exemption. *See Williams v. Taylor*, 529 U.S. 420, 431-32 (2000) (Courts must give words "their ordinary, contemporary, common meaning, absent an indication

Congress intended them to bear some different import."). Building on this general definition, the pertinent Treasury regulation says that "[a]n employee who performs services in the employ of a school, college, or university, as *an incident to* and for *the purpose of pursuing a course of study* at such school, college, or university has the status of a student in the performance of such services." 26 C.F.R. § 31.3121(b)(10)-2(c) (2003) (emphasis added).

To determine whether the doctors in Detroit Medical's residency program are students, we thus need to know what the residents in the program do and under what circumstances. Yet throughout this case and in related cases in other jurisdictions, the government has taken the position that this kind of fact development plays no role in the inquiry. *See Mount Sinai, supra; University of Chicago Hosp. v. United States*, 545 F.3d 564 (7th Cir. Sept. 23, 2008). As the government sees the issue, all residents in all medical residencies are not students—that as a per se matter a resident can never be a student.

While the meaning of "student" indeed is a legal issue, the question whether residents at the Detroit Medical Center come within the term is not. Before the district court, the Medical Center argued that a facts–and-circumstances test governs this inquiry and filed a motion under Rule 56(f) of the Federal Rules of Civil Procedure to permit additional fact development before the court resolved this issue. While we have some sympathy with the district court's decision to move ahead with the case based on the many facts that already had been developed and we remain quite open to the possibility that this case still can be resolved through summary judgment, our deliberations have prompted us to conclude that our decision in this case would be better informed if the parties were given additional time to supplement the record. In particular, it would be helpful if they could present evidence (preferably agreed-upon facts) about these points: (1) how many hours a week does a typical resident spend at the hospital; (2) how many hours a week does a typical resident spend in the classroom; (3) what other responsibilities does a typical resident have under the program and how much time on average do they take each week; (4) how is a typical resident's time spent at the hospital:

Is it all spent providing patient care and supervising other residents and nursing providing patient care (or being on call to do these things), or does it include other activities and, if so, what are they and how much time do they typically take each week; (5) what role do professors from Wayne State University play in supervising residents while they provide patient care at the Medical Center; (6) who employs the residents: the Detroit Medical Center, Wayne State University or some combination of the two; and (7) if the student exception applies to the residents, is there any other state or federal program under which the residents or their families would be (or would have been) eligible for disability or survivor benefits of the kind provided by the Social Security program?

In identifying these issues, we do not limit the parties in developing the record in other ways. And nothing we have said limits the district court from reaching a similar, or for that matter different, conclusion in resolving a future summary-judgment motion. Given, however, that the parties already have developed the record extensively, that this case has been pending for some time and that other district courts within the circuit await our guidance on the point, we urge the parties to supplement the record promptly, ask the district court to resolve any summary-judgment motions promptly and suggest that, if the losing party has a right of appeal, it seek expedited appellate review, which this panel will do its best to decide promptly.

CONCLUSION

For these reasons, we affirm the district court's resolution of the "qualified scholarship" exception to FICA, vacate its resolution of the "student" exception to FICA and remand the case to the district court for further proceedings consistent with this opinion.