T.C. Summary Opinion 2009-115

UNITED STATES TAX COURT

PAUL D. AND ALICIA L. MUSSHAFEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20482-07S.                    Filed July 23, 2009.

Paul D. and Alicia L. Musshafen, pro sese.

<u>William F. Castor</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the years in issue, and all Rule references are to the Tax Court
Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal
income taxes for 2004 and 2005 of $7,916 and $8,324,
respectively, together with accuracy-related penalties under
section 6662(a) of $1,583.20 and $1,664.80, respectively. After
petitioners' concession, the issues for decision are: (1)
Whether petitioners are entitled to a foreign earned income
exclusion under section 911(a) for 2004 and 2005; and (2) whether
petitioners are liable for accuracy-related penalties under
section 6662(a) for 2004 and 2005.

## Background

Some of the facts have been stipulated and are so found.
The stipulation of facts and the attached exhibits are
incorporated herein by this reference.

Paul D. Musshafen (petitioner) has worked for Parker
Drilling Management Services, Inc. (PDMS), located in Houston,
Texas, since 1981. PDMS operates a production oilfield in
Kuwait. PDMS has assigned petitioner to work in several
different countries over the years, including Ecuador, Bolivia,
and Kuwait. Petitioner was assigned to work in Kuwait in 2002 as
an onshore rig supervisor at a drilling rig site. Petitioner was
working in Kuwait during the 2004 and 2005 tax years. At the
time of trial he was working at a rig on an oilfield in the

Kuwaiti desert near Amadhi, Kuwait, that was owned by the Kuwait Drilling Co.

During the entire time that petitioner has spent in Kuwait he has lived in employer-furnished housing on the rig site, which is a 45-minute drive from Kuwait City. In addition to housing, PDMS provided petitioner with food and medical services. Generally, other than being driven between the airport and the rig site, petitioner did not leave the site because of PDMS' security precautions. However, on occasion, he traveled to Kuwait City under the recommendation that he stay within the area secured by the Kuwaiti military. Petitioner worked at the jobsite on an alternating 35-days-on, 35-days-off schedule. During petitioner's 35-day duty periods he worked 12-hour days and was on call 24 hours per day. Petitioner does not presently speak Arabic, but he is being taught the language at his jobsite.

Petitioner spent his 35-day-off-duty periods in Chickasha, Oklahoma. Alicia Musshafen, a homemaker, and their daughter, who was 16 years old in 2004, reside in Chickasha, Oklahoma, where petitioners jointly own a house and a motor vehicle and maintain a bank account. Petitioner's paychecks were directly deposited into the bank account in Oklahoma. Petitioner also has an Oklahoma driver's license, a U.S. passport, a resident visa sponsored by PDMS and issued by the Kuwaiti Government, and a

Kuwaiti identification card.  Any taxes or fees petitioner is required to pay to the Kuwaiti Government are paid by PDMS.

Mrs. Musshafen and petitioner's daughter have never visited Kuwait, primarily because:  (1) Their daughter attended high school in Oklahoma; (2) petitioner returned to his hometown during his 35-day-off-duty periods, which eliminated the need for his family to visit him in Kuwait; and (3) there were safety and security reasons that weighed against a visit to Kuwait.

Petitioners have elected the foreign earned income exclusion since 1992.  Ms. Thomas, a certified public accountant (C.P.A.), has prepared petitioners' tax returns since 1991.  In order to determine whether petitioners were entitled to the foreign earned income exclusion, Ms. Thomas performed her own research and consulted with an expert at the Oklahoma Society of C.P.A.s and with an attorney.  Petitioner and Ms. Thomas together concluded that petitioners were entitled to the foreign earned income exclusion on the basis of her research and consultations.

Discussion

I.  <u>Foreign Earned Income Exclusion</u>

U.S. citizens are required to include in gross income all income from whatever sources derived, unless a specific income exclusion applies.  See sec. 61(a); <u>Arnett v. Commissioner</u>, 126 T.C. 89, 91 (2006), affd. 473 F.3d 790 (7th Cir. 2007). "Exclusions from income are construed narrowly, and taxpayers

must bring themselves within the clear scope of the exclusion." Arnett v. Commissioner, supra at 91-92. There is a specific income exclusion for a qualified individual whose tax home is in a foreign country. Sec. 911(a), (d). At the election of a qualified individual the foreign earned income of such individual is excluded from gross income and exempt from taxation. Sec. 911(a)(1). A qualified individual is an individual whose tax home is in a foreign country and who is either: (1) A citizen of the United States and a bona fide resident of a foreign country for an uninterrupted period which includes an entire taxable year (the bona fide residence test) or (2) a citizen or resident of the United States who, during any period of 12 consecutive months, is present in a foreign country during at least 330 full days in such period (the physical presence test). Sec. 911(d)(1). Petitioner bears the burden of proving that he is a qualified individual entitled to the foreign earned income exclusion. See Rule 142(a); Nelson v. Commissioner, 30 T.C. 1151, 1154 (1958); Cobb v. Commissioner, T.C. Memo. 1991-376.

The term "tax home" means an individual's home for purposes of section 162(a)(2) (relating to travel expenses while away from home); however, an individual shall not be treated as having a tax home in a foreign country during any period for which his abode is within the United States. Sec. 911(d)(3).

- 6 -

> Abode has been variously defined as one's home, habitation, residence, domicile or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of abode depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus abode has a domestic rather than vocational meaning, and stands in contrast to tax home as defined for purposes of section 162(a)(2). * * *

Bassett v. Commissioner, T.C. Memo. 1988-218 (quoting Bujol v. Commissioner, T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988) (quotation marks omitted). A taxpayer's abode is the location where he has strong economic, family, and personal ties. Bujol v. Commissioner, supra.

Several previous cases have dealt with this precise issue, including Brobst v. Commissioner, T.C. Memo. 1988-456; Lemay v. Commissioner, T.C. Memo. 1987-256, affd. 837 F.2d 681 (5th Cir. 1988); and Bujol v. Commissioner, supra. Although Lemay and Bujol involved taxpayers working on an offshore drilling rig in the territorial waters of a foreign country and Brobst involved a taxpayer working on an onshore oil storage facility, the facts of the three cases are not materially different from those of the present case. In Brobst, Lemay, and Bujol the taxpayers had alternating work schedules of 28 days on duty and 28 days off duty, with off-duty periods spent in the United States. In all three cases the taxpayers lived in employer-furnished housing, had little contact with foreign nationals, and maintain a home and family in the United States. In all three cases the Court

concluded that the taxpayers were not entitled to the foreign earned income exclusion because their abode was in the United States.

Similar to the taxpayers in the cases cited above, petitioner had a rotating work schedule that placed him in Kuwait every other 35-day period. He spent his 35-day-off-duty periods at his residence in Oklahoma. Therefore, during 2004 and 2005 he would have spent approximately 182.5 days in Kuwait and 182.5 days in Oklahoma. Petitioner's wife and daughter lived in Oklahoma; petitioners' daughter attended high school in Oklahoma; and petitioners jointly owned a house and motor vehicle and maintain a bank account in Oklahoma. Petitioner also had an Oklahoma driver's license, a U.S. passport, a resident visa sponsored by PDMS and issued by the Kuwaiti Government, and a Kuwaiti identification card. Further, petitioner has stipulated that he was generally confined to the jobsite for security reasons and, therefore, could have had only very limited interaction with Kuwaiti nationals.

Petitioner testified that he is contemplating moving his family to Kuwait after his daughter graduates from high school, renting an apartment or obtaining housing in an expatriate community, and retiring there. Petitioner added that Kuwait would be a nice place to retire because, although the climate is somewhat inhospitable, the Kuwaitis with whom he has come in

contact are very friendly. Even if we were to find petitioner's comments to be realistic, they are not dispositive in determining the location of his abode under the statute.

On the basis of the entire record, we find that petitioner's economic, family, and personal ties were in Oklahoma during 2004 and 2005. Petitioner's abode was in Oklahoma; therefore, he could not have a tax home in a foreign country. See sec. 911(d)(3). Petitioner's tax home must also have been in Oklahoma. Having determined that petitioner's tax home was in Oklahoma during the 2004 and 2005 tax years, we conclude that petitioner is not a qualified individual, and we need not inquire further as to whether petitioner meets the bona fide residence or physical presence tests. Respondent's determination is sustained, and petitioner is not entitled to the foreign earned income exclusion for 2004 and 2005.

## II. Accuracy-Related Penalties

Section 6662(a) and (b)(1) and (2) provides for a penalty equal to 20 percent of the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations or any substantial understatement of income tax. "[T]he term 'negligence' includes any failure to make a reasonable attempt to comply with the provisions" of the Internal Revenue Code "and the term 'disregard' includes any careless, reckless, or intentional disregard." Sec. 6662(c). A substantial understatement exists

"if the amount of the understatement for the taxable year exceeds the greater of--(i) 10 percent of the tax required to be shown on the return for the taxable year or (ii) $5,000." Sec. 6662(d)(1)(A).

However, a taxpayer will not be liable for an accuracy-related penalty under section 6662(a) if the reasonable cause exception of section 6664(c) applies. "No penalty shall be imposed * * * with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Sec. 6664(c)(1). "[T]he most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners engaged Ms. Thomas, a C.P.A., to prepare their Federal income tax returns and determine whether they were eligible for the foreign earned income exclusion. Ms. Thomas conducted her own research and consulted an expert at the Oklahoma Society of C.P.A.s and an attorney. Ms. Thomas reached the reasonable, albeit incorrect, conclusion that petitioner was entitled to the foreign earned income exclusion because his tax home was in Kuwait. Tax home and abode are vague legal concepts that are not clearly defined by statute and therefore require a great deal of subjective analysis. Given the nature of this area

of Federal income tax law, it does not necessarily follow that an incorrect conclusion is also an unreasonable conclusion.

Petitioners, after considering all of the information available to them and in good faith reliance on Ms. Thomas' professional opinion, claimed the foreign earned income exclusion for both years. Taxpayers and tax professionals are often required to make informed decisions relating to ambiguous areas of tax law. It follows that taxpayers and tax professionals will not always make the correct decision.

The record establishes that petitioners acted with reasonable cause and in good faith. In this case it is reasonable for the petitioners to rely on the advice given them by Ms. Thomas. Therefore, we hold that petitioners are not liable for the penalties pursuant to section 6662(a).

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiencies and for petitioners as to the accuracy-related penalties</u>.